## HOVEY *vs.* PITCHER.

1. Although an agent at the time he makes a verbal contract discloses to the other party his agency, and gives the name of his principal it does not necessarily follow that he is not personally liable. Whether the credit was given to the agent or to his principal is in such cases a question of fact to be determined by a jury from the conversation and acts of the parties at the time of making the contract.

2. It is improper for the circuit court to give an instruction to the jury which is calculated to mislead.

3. In the construction of agreements, courts must look to the objects which the parties have in view, and a substantial compliance with the obligations assumed, is all that is required.

## APPEAL FROM JACKSON CIRCUIT COURT.

### STATEMENT OF THE CASE.

This was an action of assumpsit, brought by Thomas Pitcher against J. Brown Hovey to the March term of the Jackson circuit court 1848. The declaration contained four special counts and a common count for money paid.

The first count charges that Pitcher, as sheriff of Jackson county was about to offer a reward of three hundred dollars for the apprehension and delivery of John H. Harper (a prisoner who had escaped from custody,) at the jail of Jackson county, and that Hovey agreed with Pitcher that if he would offer a reward of $500, instead of $300, that he, Hovey would pay Pitcher $200 in case Pitcher by reason of offering the reward should become liable to pay it. That Pitcher accordingly offered the reward of $500, for the apprehension and delivery of said Harper at the jail of Jackson county, by handbills and advertisement in a newspaper. That afterwards said Harper was taken by one Marcellus Duval and by him and his agents brought back to the jail of Jackson county, and that thereupon Pitcher became liable to pay Duval the $500, and did pay him that sum. Notice of payment is averred, and the count then charges that by reason of the premises the defendant became liable to pay the plaintiff $200, on request &c.

The second count charges the same facts as to the agreement and the offer of the reward and then alleges that Harper was afterwards apprehended by Marcellus Duval and by him and one Nicholas A. Prior brought back as far as Springfield, towards the jail of Jackson county, and that the then sheriff of Jackson county there met them and took Harper away from them by virtue of a bench warrant, and conveyed him to the jail of Jackson county &c., and this count then alleges that by reason of the premises, Pitcher became liable to pay $500, to Duval and Prior, and did pay it, and that Hovey thereupon became liable to pay Pitcher the $200, on request &c.

The third count charges the same facts as the second with this exception, that it sets up a contract as of a reward for the apprehension alone, and not the apprehension and delivery of Harper at the jail of Jackson county, and averse payment by Pitcher to Duval and Prior at Springfield.

The fourth count proceeds like the third, as of a reward for the apprehension alone, and avers that plaintiff paid $400, to Duval and Prior at Springfield, which they received in full satisfaction of the $500, and then avers defendant's liability to pay two fifths of the $400, on request &c.

All the special counts charge the fact that Harper, previous to his escape, had been committed to the jail, by Justices, on a charge of murder, and none of them allege a promise by defendant, upon or after the allegation of his liability to pay &c.

To this declaration the defendant plead the general issue prescribed by the acts of 1847.

At the September term 1849 the defendant moved the court to strike out the special counts for want of sufficient averment of notice, and because said counts did not aver a promise by defendant to pay, upon or after the allegation of defendant's liability. This motion was overruled by the court below and defendant excepted. This cause then came to trial by a jury, and the following testimony was introduced. John Heard, a witness for the plaintiff stated that about the 1st day of August A. D. 1846, he was called upon by plaintiff to write a notice describing the person of John H. Harper, and offering a reward for his arrest and delivery at

the jail of Jackson county; that he consented to do so, but that about the time he commenced writing, the defendant came in and enquired what reward was to be offered! That he told defendant that plaintiff would offer three hundred dollars! Defendant said that three hundred dollars was too little, and spoke of some authority that the friends of W. W. Meredith had given him touching the case of Harper; and thinks that defendant also said that they would be willing to contribute if plaintiff would bid a larger amount. Witness told defendant that it would be unsafe for plaintiff to rely upon the friends of W. W. Meredith to pay the reward or any part of it, and suggested that he, defendant, could bid as much as he thought proper himself, for Meredith's friends. Defendant said that the fact that plaintiff was sheriff, would give weight to the bid, and make the arrest of Harper more probable, witness told defendant that he could not advise plaintiff to bid more, relying upon the friends of Meredith to pay it. Defendant then said that he would, if plaintiff would bid five hundred dollars reward, undertake, if the reward ever had to be paid, to pay two hundred dollars of it himself, and at the same time witness think she said that they, Meredith's friends, would not let him pay it, or some words to that effect. Witness then asked plaintiff if he was willing to take defendant for the two hundred dollars and offer $500, instead of $300. Plaintiff said he was willing, and the notice was filled with five hundred dollars. Witness stated that the following copy was the notice published by handbills and in the Western Expositor, a newspaper published in Independence.

### "$500 REWARD!

#### STOP THE MURDERER!

Escaped from the jail of Jackson county Mo., on the night of the 30th July, 1846, John H. Harper, who had been committed on a charge of murdering Wm. W. Meredith. Mr. Harper is about 24 years old, 5 feet 6 or 7 inches high, well made, brown hair and a heavy beard, blue eyes, a florid complexion, a plump round face, pleasing address, and very genteel appearance. He is a fine scholar and a lawyer by profession.

The above reward will be paid for the apprehension, and delivery of said Harper at the jail of Jackson county aforesaid.                                        THOMAS PITCHER,

Independence, August 1st 1846.                                 Sheriff of Jackson county."

Witness believes that plaintiff was present all the time when the conversation above related, took place between himself and defendant,—knows he was present when defendant offered to pay $200, as above stated. This conversation took place in the witness' office in Independence, Mo. Plaintiff at first requested witness to put $300 into the notice as a reward, but after that conversation he told witness to make the reward $500.

On cross-examination he stated that he thinks plaintiff was present at the entire conversation—that considerable altercation took place between plaintiff and defendant, the words of which, witness does not recollect, but thinks he has stated the substance of all that took place between the parties,—that defendant assisted in describing the person of Harper and in writing the notice, but witness does not remember that defendant suggested the last clause in the notice. Thinks Hovey said that if the reward had to be paid, he would pay $200 of it, but does not recollect any special promise to pay it to Pitcher or any other particular person. He further stated that he knew that Hovey (defendant) prosecuted Harper before the committing Justices, but did not know of his own knowledge, who employed him to do so.—That at the time of writing the notice, Hovey stated that he was authorised by the father of Meredith to take any steps that he thought necessary to bring Harper to Justice. Witness considered Hovey the attorney of the friends of Meredith.

Defendant put the following question to the witness. "Did you not, on a former trial of this cause, before the circuit court, in answer to a direct question propounded to you upon that point, by the Judge, say, that Hovey's undertaking was to pay so much of the reward to the person who should apprehend and deliver Harper at the jail of Jackson county!" To this question the witness answered. "I never stated that Hovey promised to pay the person delivering

Harper at the jail. I may have said that my understanding was that Hovey was to pay two hundred dollars of the five hundred bid, when Harper should be delivered at the jail."

Benjamin F. Thomson, a witness for the plaintiff, stated that in the latter part of September, 1846, at the town of Springfield in this State, he saw plaintiff pay to one Prior $400, for the arrest of John H. Harper. Prior claimed $450 at first, which plaintiff refused to pay, because plaintiff said it was worth more than fifty dollars to bring Harper to Independence. That plaintiff, on the same evening authorised witness to say to Prior, that he would give him $400; and on being informed of this, Prior said he would take it, and the $400 was paid by plaintiff to Prior. That some four days previous to this payment, information was received by a letter from Prior to plaintiff, that John H. Harper had been arrested, and was in the town of Springfield in this State, detained by Duval and Prior. On reception of this information, witness went to the town of Springfield, and took with him a bench warrant and a capias for the arrest of said Harper; the capias was directed to the sheriff of Green county. He further stated, that after he arrived at Springfield, he took Harper by virtue of the bench warrant and brought him back, and put him in the county jail of Jackson county. That he did not arrest Harper nor take him in custody by virtue of the bench warrant until after plaintiff and Prior had settled upon the amount of money to be paid for the arrest of Harper, and until after the money was paid, and that no use was made of the capias at all. That the bench warrant was issued by the Jackson circuit court while in session at the September term, 1846. He further stated, that the plaintiff and several others went with him to Springfield at the time spoken of above, but that he does not know whether the defendant knew that plaintiff was going or not. That he and some others were in conversation with plaintiff near the court yard gate before they started from Independence to Springfield, talking over the arrest, &c., when defendant came up to the crowd and said to plaintiff, "Tom, you shan't lose," or "you shan't pay a dollar of the reward." Witness did not recollect which word was used, "lose" or "pay."

On cross examination, witness stated that the $400 paid by plaintiff was paid for arresting and bringing Harper to Springfield. That Springfield is from 160 to 200 miles distant from Independence. That he made no charge for going to Springfield, but made a statement of going after Harper to the county court of Jackson county, and they made an order allowing to each man who went with him the sum of nine dollars. The warrant for the money was issued in witness' name, and he paid plaintiff his share, which he thinks was nine dollars.

Henry W. Younger, a witness for the plaintiff, stated that he was one of the men who went with sheriff Thomson to Springfield after Harper; that they found Harper at the latter place in the custody of one Prior, a deputy sheriff of Van Buren, Arkansas, and an Indian agent, whose name he thinks was Duval. That plaintiff, Pitcher, negotiated with the parties who had Harper in custody, by which he was to pay them four hundred dollars. That he did not see any money paid; but that Prior and the Indian agent left in the stage before day light next morning, and he knows that they had been satisfied by Pitcher. That Thomson took possession of Harper as soon as Pitcher had settled with the parties, and Harper was next morning taken by us and brought back to Independance and placed in the jail of Jackson county. We got to Springfield in the evening, and left for home next morning.

Plaintiff then read in evidence a transcript of a judgment of two justices of the peace, committing John H. Harper to the jail, to answer to the charge of murdering William Wirt Meredith.

John Kelly, a witness for the plaintiff, stated that he was jailor under plaintiff, Pitcher, when Harper was put in jail, and that Harper remained in the jail of Jackson county as long as he remained jailor. That about the latter part of July, 1846, he saw a hole in the wall of the jail, and Harper was gone from the jail, at which time the witness was not jailor.

### DEFENDANT'S TESTIMONY.

Thomas J. Shaw, a witness for the defendant, stated that he was one of the jury which

tried this cause before, when a non suit was taken; that John Heard was then, as now, a witness for the plaintiff, and that his best impression is,'that in answer to a question asked him on that point, said John Heard said that the promise of Hovey, the defendant, was to pay two hundred dollars of the reward to the person who should apprehend and deliver Harper at the jail of Jackson county. Witness was not certain as to the precise words used by Mr. Heard, but was lead forcibly to that impression from the fact that upon Heard's answer to that question, the plaintiff took a nonsuit.

Newton J. Hockensmith, a witness for the defence, testified that immediately before the first suit between the parties, about this same matter, he went with plaintiff to the office of defendant, and after the usual salutations, plaintiff said to defendant that he had come "to see about that $200." Defendant seemed surprised, and asked "what $200?" Plaintiff replied, "Heard says you promised, as the attorney or agent of Meredith, that you would pay $200 of the reward, in case I had to pay it." Defendant denied it; and said that he had never promised to pay plaintiff a cent; and then rehearsed what had taken place between himself and Heard. Defendant stated to plaintiff that on the morning after Harper escaped, Heard was about to offer a reward of $300 for the apprehension and delivery of Harper, in the name of plaintiff, in order to save plaintiff's election, which was about to come off, supposing that plaintiff was in Suybar township electioneering, and would not be in, in time to offer it himselt; and that he, defendant, told Heard that $300 was not enough, and that he was authorized by Meredith, the father of the deceased, to do anything that might be necessary for the safe keeping or re-arrest of Harper in case of escape, and that if Heard would offer $500, that he, defendant, would agree, as the attorney of Meredith, to pay $200 of it, in case plaintiff did not stand up to it when he came in, and that while they were talking of it plaintiff came in himself, and offered the reward himself, only requesting of Heard and defendant, that they would draw up the notice, as they could better describe Harper than he could.

When defendant made this statement, plaintiff replied, "Heard says you did!" and seemed still to refer to Heard. Defendant then said to plaintiff: "If you had any thing against me, in any way, why have you let three or six months pass without naming it to me?" Plaintiff replied that he was waiting to see if the people would not make the reward up to him by subscription. Defendant then asked plaintiff if he had not had frequent conversations with him about the reward, and about getting the people to make it up to him, since the payment of the money at Springfield, and whether plaintiff, during all that time, had ever named such a thing as a liability on defendant's part? Plaintiff acknowledged that he had had such frequent conversations, and that he had never before named defendant's liability, &c., and gave as his reason, that he was waiting to see if the people would not make up the reward to him. Defendant then asked plaintiff if he had not had in his possession an amount of money (the amount not recollected by the witness) belonging to defendant, since Harper's re-arrest and delivery at the jail, and whether he had not paid that money over to him, defendant, without naming any liability on defendant's part to him? Plaintiff replied that he had, but still referred to Heard. Defendant then said to plaintiff, "Did I ever promise to pay you a cent in my life?" Plaintiff seemed to avoid answering this question, but still referred to Heard. Defendant then proposed to go and see Heard before bringing the suit, to which plaintiff agreed; but plaintiff did not wait to go and see Heard, but brought the suit immediately, contrary to his agreement with defendant. Witness further stated, that it was generally understood in the community that defendant was the attorney of young Meredith's friends. It was also generally understood that Meredith, the father of the deceased, was a man of wealth, and that defendant, at the time, had no visible property out of which money could be made.

On cross examination he stated that the plaintiff did not at any time during the conversation, say that Hovey had *not* made the promise to him. That he had known John Heard, the witness, several years, and that his character for truth and veracity was above suspicion.

The plaintiff proved by several witnesses that the character of John Heard for truth and

veracity was good, and on cross examination, Mr. Palmer, one of his witnesses, stated that Heard had been a partner of his in practice of law, for two years past, and that Heard's recollection of facts and circumstances was not good.

Robert G. Smart, a witness for the plaintiff, further stated that soon after Harper had been re-arrested and delivered at the jail of Jackson county, plaintiff and defendant came up to him on the street, and defendant he thinks asked his opinion about getting up a subscription to make up the reward to plaintiff; witness said to them that there had been a good deal of excitement about Harper's escape, and that they had better get up the thing quietly. Defendant then said he would give ten or twenty dollars towards it, and after some further conversation, plaintiff remarked, "I don't care how it is done, I want my money from somebody."

Upon this testimony, the plaintiff asked the following instructions:

"1st. That if the jury believe from the evidence that defendant promised plaintiff, if he, plaintiff, would offer a reward of $500, instead of $300, for the apprehension of said Harper, that he defendant would pay plaintiff $200 of the reward, if he said plaintiff should have the said reward to pay; and that said plaintiff did offer the reward of $500, for the apprehension and delivery of said Harper, at the jail of Jackson county, and that said Harper was apprehended in consequence of offering said reward; and was on the way to the jail of Jackson county, in custody of the persons who had apprehended him: and was met by the then sheriff of Jackson county before he got to said jail, and said Harper was taken out of the custody of the persons who had apprehended him, by said sheriff and conveyed to said jail; and that the persons who apprehended Harper, agreed with the plaintiff to take less than the reward offered; and that said plaintiff paid said persons who had apprehended Harper $400, according to said agreement; then said defendant is liable to said plaintiff for four-fifths of said $200, and the jury will find for the plaintiff accordingly."

"2d. That although the jury may believe from the evidence that the said defendant declared at the time the said reward was offered, that he was the agent of Mr. Meredith, the father of the deceased, and that as such agent he was authorised to offer a reward, or take any other steps necessary to arrest said Harper, yet the jury must not, from the said declarations of said defendant alone, unsupported by other evidence of the fact, find that said Hovey was the agent of said Meredith, and unless they believe from other evidence than the said declaration of said Hovey, that he offered the reward as such agent, they must find for the plaintiff."

Defendant objected to these instructions. The court below gave them to the jury, and defendant excepted.

Defendant then asked the following instructions:

"1st. That if the jury believe from the evidence that defendant promised to plaintiff, if plaintiff, would offer $500 for the arrest and delivery of Harper, at the jail of Jackson county, Missouri, and plaintiff should afterwards become liable to pay such sum in consequence of such offer, he, the defendant would pay to plaintiff $200 of that sum. Yet if they believe from the evidence that plaintiff paid the said sum, or any part of said sum for the apprehension and delivery of said Harper, at any other place than the jail of said county, they must find for the defendant.

"2d, That if they believe from the evidence that Hovey contracted with Pitcher as the agent of Meredith, and disclosed his principal at the time of making his contract, they must find for the defendant.

"3d, That proof of the payment to Prior does not support the allegation of payment to Duval.

"4th, That proof of payment of $400 to Prior, does not support the allegation of payment to Duval and Prior.

"5th, That if the jury believe from the evidence that defendant agreed to pay $200 of the reward offered by plaintiff for the apprehension and delivery of Harper at the jail of Jackson county, and that Duval and Prior, having apprehended said Harper, were by said plaintiff released and discharged from delivering said Harper at the Jackson county jail, in consid-

eration of a different sum than the one offered, whether more or less than that sum, then and in such case Hovey is not liable, unless he consented to the alteration thus made by said Pitcher, Duval and Prior.

6th. "That if the jury believe from the evidence that plaintiff paid money for the apprehension and delivery of J. H. Harper, before he was delivered at the jail of Jackson county, then he paid the same of his own wrong, and cannot recover of the defendant therefor, unless they also believe from the evidence that the defendant instructed him so to do, or consented thereto.

7th. "That if they believe from the evidence that the plaintiff at the time of offering the reward, knew nothing of the alleged promise of defendant they will find for the defendant.

8th. "That, though they should believe from the evidence that defendant made the promise to pay $200 of the reward in case plaintiff became liable to pay the $500, so offered as a reward, yet, if they believe from the evidence that the plaintiff has paid no money by reason of offering the reward, except the $400, which is stated he paid at Springfield, before Harper was delivered at the Jail of Jackson county, they must find for the defendant.

9th. "That unless they believe from the evidence that defendant requested plaintiff to pay for him, his, defendants alleged portion of the reward, at Springfield, before Harper should be delivered at the jail of Jackson county, they must find for the defendant generally.

10th "That if they believe from the evidence that defendant's alleged promise, was to pay so much of the reward to the person who should apprehend and deliver Harper at the jail of Jackson county, and not to plaintiff, they will find for the defendant.

11th. "That there is no evidence before the jury that defendant requested plaintiff to pay any money for him at Springfield, or before Harper should be delivered at the jail of Jackson county."

The court below refused to give the 1st, 4th, 5th, 6th, 8th, 9th, 10th and 11th instructions asked by defendant, and he excepted.

There was a verdict for the plaintiff for $160, and defendant moved to set it aside and to grant him a new trial, because the jury found contrary to the law and the evidence, and without sufficient evidence, and for the cause saved in the bill of exceptions.

This motion was overruled by the court below, and defendant excepted.

There was a judgment upon the finding, and defendant moved in arrest, because of the insufficiency of the declaration, and because the court refused to strike out the special counts. This motion was also overruled by the court below, and defendant excepted, and this cause is brought here by appeal.

### Hovey for appellant.

1st. That the special counts in the declaration do not charge that defendant promised. See Chitty's Pleading, vol. 1, page 309 ; 6 Mo. Rep. Muldrow vs. Tappan, p. 276.

2nd. That the court erred in giving the instructions asked by the plaintiff, in this:

*First.* That the first instruction proceeds as if the evidence was of a reward for the apprehension alone, when the evidence is of a reward for the apprehension and delivery, &c. 3 Mo. Reports, 286.

*S. cond,* That it assumes the fact that Thomson was sheriff, and there is no evidence of the fact. 4. Mo. Rep. 106.

*Third,* That it assumes the fact that Thomson was clothed with authority to take Harper from Prior at Springfield, when that fact should have been left for the jury to find. 8 Mo. Rep., 224.

*F. u th.* That the doctrine inculcated by the first instruction, is not the law arising upon the facts in this case.

See Chitty on Contracts, page 499 and 529 ; U. S. Cond. Reports, vol. 5, page 727 ; Starkie 2, page 46 and following ; Smith's leading cases, note O. P. 70 a 2.

*Fifth,* The second instruction takes the whole matter of contract from the jury, and precludes them from considering to whom the credit was given in the original contract. Mo. Rep. 6, 64 and 37.

3rd. That the court below ought to have given to the jury the instructions asked by defendant, which were not given.

*Frs:,* That they ought to have given the 1st, 5th, 6th and 8th instructions asked by defendant. See authorities cited against 1st instructions given for plaintiff.

*Second,* That they ought to have given the 4th instruction asked by defendant. See Starkie 2, page 46 and cases there cited in note.

*Third,* That they ought to have given the 9th instructions asked by defendant, because none of the special counts are supported by the testimony, and the plaintiff could not recover on the common count without proof of a request, unconnected with the speciality. See record. See also Starkie on Evidence, vol. 2, page 53.

*Fourth,* That they ought to have given the 10th instructions asked by defendant. See the evidence, and also see Starkie 2, page 46 and case there cited in the note.

*Fifth,* That they ought to have given the 11th instruction asked by defendant. See the testimony, and also 11 Mo. Rep. 115, Lee et al. vs. David.

4th. The evidence does not support any of the special counts in the declaration.

*First,* The first count alleges payment to Duval. The proof is payment to Prior.

*Second,* The second count alleges payment to Duval and Prior. The proof is payment to Prior. It alleges that Thomson was sheriff. There is no proof of that fact. It alleges that Thomson took Harper, by virtue of a bench warrant, out of the custody of Prior and Duval. Parol evidence is incompetent to prove a record, and the proof is, that Thomson did not take Harper out of their custody by law or trespass.

*Third,* The third and fourth counts allege the offering of the reward for the "apprehension" alone. The proof is of a reward for the apprehension and *delivery.* Also the same variance attaches as to the second count.

5th. The plaintiff could not recover upon his common count for money paid to defendant's use. See Starkie on Evidence, vol. 2, page 55 a 6; Robertson vs. Linch, 18 Johnson's Reports, 456; Spratt vs. McKinneys, 1 Bibb's Reports, 595; 8 Mo. Rep. 517.

6th. That the plaintiff was not liable to pay the $400 by reason of offering the reward, and cannot recover of the defendant for any part of said term.

7th. That the jury ought to have found for the defendant.

HAYDEN AND ENGLISH for appellee.

1. The court did not err in overruling the motion to strike out the four special counts.

The defendant moved the court to strike out these counts, upon the ground that they were substantially defective. If they were defective, he could only avail himself of the defect by demurrer or motion in arrest of judgment. Bury vs. St. Louis, 12 Mo. Rep. 298; Mullen vs. Pryor, 12 Mo. Rep. 307. But the record shows that the defendant did demur to the plaintiff's declaration, and being unwilling to abide by the judgment on the demurrer, withdrew it and filed the general issue; thereby abandoning the alleged defects in the declaration. Besides, counts will only be stricken out when they appear on the face of the declaration to be superfluous, not defective. 1. Tidd Pr. 667, and the motion is one directed to the discretion of the court.

2. The court did not err in overruling the motion in arrest of judgment. The grounds of the motion in arrest were, first, that the declaration was defective, and second, that the court overruled his motion to strike out the counts. This last was no ground, under any circum-

stances, for arresting a judgment; and as to the ground that the declaration was defective, the court did not err.

*First,* Because the defendant having demurred to the declaration, and being unwilling to abide by a judgment on the demurrer, withdrew it and filed the general issue. He thereby abandoned any defects in the declaration, and could not subsequently avail himself thereof by motion in arrest of judgment.

*Second,* Because the declaration containing five counts, four special and one common count, and the common count being good, and entire damages being given, the good common count will sustain the verdict and judgment thereon. Rev. Code '45, p. 831, sec 7.

3. The court did not err in overruling the motion for a new trial.

The reasons assigned for a new trial, are,

1st. That the court wrongfully permitted the plaintiff to introduce parol evidence of facts, which should have been proved by the record.

2nd. Because the court overruled the motion to strike out the special counts.

3rd. Because the verdict is against evidence and the weight of evidence.

4th. Because the verdict is against law.

5th. Because the court gave plaintiff's instructions.

6th. Because the court refused defendant's instructions.

*First,* As no exception appears by the bill of exceptions to have been saved to the introduction of testimony, there is nothing in the first reason assigned for a new trial.

*Second,* The second reason, enumerated above, could, under no circumstances, be a ground for a new trial.

*Third,* The defendant assigns as a reason, that the verdict is against the evidence and the weight of evidence.

The bill of exceptions shows that there is ample evidence to sustain the verdict. The testimony of Mr. John Heard establishes the contract between Hovey and Pitcher, as alleged in the declaration. He also proves the publication of the notice of the reward offered. Mr. Thomson proves the receipt of Harper from those who had arrested him, and the payment of the money by Pitcher to those who had arrested him. There was some little evidence offered to try to impeach the testimony of Mr. Heard, but it was not of such a character as to have any weight with the jury; and this court will not say that the jury found a verdict against the evidence, when the court that tried the cause had refused to disturb it; unless that verdict is clearly against the evidence. Oldham vs. Henderson, 4 Mo. R. 301; Vaughn vs. Montgomery, 5 do. 532; Mullikin vs. Greer, 5 do. 493; Lackey vs. Lam et al. 7 do. 221.

*Fourth,* That the verdict is against law.

This objection is considered when we review the 5th and 6th objections.

*Fifth,* That the court erred in giving the plaintiff's instruction.

1st. The court did not err in giving the plaintiff's first instruction.

The objections which the defendant takes to this instruction. "that it proceeds as if the evidence was of a reward alone, that it assumes the fact that Thomson was sheriff," and "that it assumes the fact that Thomson had authority to take Harper," are not founded in fact, as may be seen by looking at the instruction itself and the evidence in the bill of exceptions.

The appellant considers himself in the light of a surety, which he is not, and the authorities he has read are inapplicable to the case.

He is an original promissor; the liability incurred is the consideration; Pitcher the contractor. In consequence of the reward offered, Pitcher became liable and paid $400; and the appellant has no right to claim exemption because Pitcher did not pay all that he might, under the reward offered, have been compelled to pay. If he sustained damage in consequence of Hovey's promise, Hovey is responsible for that damage.

2nd. The court did not err in giving the plaintiff's second instruction.

If this instruction be wrong, it did not injure the defendant, for there is no testimony in the case from which the jury could have believed that the defendant made the promise, for Mr.

Meredith, as his agent; and we do not see why the instruction was asked. (Finney et al. vs. Allen, 7 Mo. Rep. 419.) The appellant did not promise to pay the money in behalf of Mr. Meredith as his agent. He promised to pay it himself. Mr. Hockensmith does not say that Pitcher said that Heard says that you promised that Mr. Meredith would pay; but that Heard says that you promised that you would pay.

*Sixth.* That the court erred in refusing to give defendants instructions.

1st, The court did not err in refusing to give the first instruction asked for by defendant.

A contract is to be construed according to the object and intent of the parties; (Ch. on Con. 74.) The object was to recover the person of Harper for the purpose of justice ; that object was accomplished.

2nd, The court did not err in refusing to give the fourth instruction asked for by defendant : Because Duval and Prior are proved to have had Harper in charge, and though Prior may have been the instrument in receiving and counting the money, yet they being together, the payment of the money to one is the payment of the money to two; as the payment of the money to one partner is the payment of the money to the firm.

3d, The court did not err in refusing to give the fifth instruction asked for by defendant.

4th, The court did not err in refusing to give the sixth instruction asked for by defendant.

5th, The court did not err in refusing to give the eighth instruction asked for by defendant.

6th, The court did not err in refusing to give the ninth instruction asked for by defendant : Because no request was necessary from Hovey to Pitcher, before Pitcher could be compelled to pay the reward offered, and the instruction was inapplicable to the first four counts.

7th, The court did not err in refusing to give the instruction asked for by defendant; because the presumption is that the money is to be paid to him from whom the consideration moves. Ch. Cont. 76.

8th, The court did not err in refusing to give the eleventh instruction asked for by defendant.

NAPTON, J., delivered the opinion of the court.

The principal and most important objection to the judgment in this case arises from the instructions which the court gave on the subject of agency. The defendant introduced proof to show that he made no contract with Pitcher, in relation to the reward offered by the latter for the apprehension and delivery of Harper, and also some evidence to show that, if he made any, it was in the character of an agent for Meredith. The circuit court gave two instructions on this subject, one at the instance of plaintiff, and the other asked by the defendant. The latter was correct, the former not.

It does not follow, because a person discloses himself to be an agent, and gives the name of his principal, that he is therefore not personally liable. The person with whom he is dealing may be unwilling to trust the principal, and yet willing to contract with the agent, upon his personal responsibility; and it then becomes a question of fact, to be determined by the circumstances of the case, whether the credit was given

to the agent or not. The conversation and acts of the parties, at the time of the contract, must necessarily be evidence, indeed, in the absence of any written agreement, the only evidence of what the contract was. These are the *res gestae*—the contract itself. The admission of such testimony does not impair to the slightest extent, that well settled rule that a party cannot make evidence for himself; that his declarations in his own favor are not admissible. This rule is understood to be confined to declarations and acts *exporte facto,* if I may be allowed the phrase—made in the absence of the party contracted with and after the transaction has passed away.

The second instruction given at the plaintiff's instance is certainly obscure; but if I understand it aright, it is calculated to mislead. The premises laid down in the first branch of the instruction are followed by a conclusion, which seems to have no bearing upon the case, and so far might be regarded as harmless, but a second sequence is drawn from them in the concluding paragraph, which not only makes the meaning of the entire instructions very obscure, but is in itself erroneous. Had the jury been told that the defendant's declarations that he was agent, and was authorized to offer a reward, were not sufficient of themselves to authorize a verdict in his favor, no objection could have been made to the proposition. For these facts may have existed, and yet the plaintiff may not have thought proper to give Meredith credit, and may have preferred contracting with the defendant. There was evidence to warrant this hypothesis and counter evidence which the jury were to determine. But the instruction proceeds to direct the jury that from such declarations alone, unsupported by other evidence, they must not find Hovey an agent. It was immaterial whether Hovey was agent or not; that is, whether he was an authorized agent or not. The controversy was not between him and his supposed principal, but between him and a third party, claiming to have contracted with him upon his individual responsibility, and the material question was, did the parties so contract or was the contract made with Hovey as the agent of Meredith? The instruction concludes with a distinct and independent proposition : "and unless the jury believe from other evidence than the said declarations of Hovey that he offered the reward as such agent, they must find for plaintiff." This last clause was certainly calculated to mislead. Hovey's declarations to Pitcher or Pitcher's agent, Heard, were undoubtedly evidence of the understanding between them, as well as what was said by Pitcher or Heard. To enable the jury to ascertain the intent of both parties, it was proper for them to know all that passed between them at

the time of the supposed contract. Declarations made by Hovey at other times and to other persons would of course be inadmissible.

A good deal was said in the argument of this case in relation to the first instruction given by the court for the plaintiff. The defendant insists that his liability under the contract with plaintiff, admitting its existence and that he made it on his own responsibility, depended upon the payment of a reward for the apprehension and delivery of Harper, to the jail of Jackson county, and inasmuch as the plaintiff thought proper to receive Harper, from those who apprehended him, at Springfield in Green county, and to pay them four hundred dollars for their services up to that point, the contingency upon which his liability depended had not occurred. We cannot regard this objection as well founded. In the construction of agreements, courts must look to the objects which the parties have in view, and a substantial compliance with the obligations assumed, is all that is required. The manifest and sole object of the defendant, in requesting the plaintiff to increase his proposed reward was to secure the person of Harper. That object was attained, Harper was apprehended, and delivered at Independence, the county seat of Jackson. If the complainant saw fit to receive Harper at Springfield, and thereby diminished by one hundred dollars, the amount of his liability, he might be regarded as assuming the risk of his delivery to the jail of Jackson upon himself. In this view of the contract, the plaintiff would be entitled to the entire sum which the defendant promised to pay upon that event, and the defendant would not have been responsible for any portion of it, had Harper made his escape from the custody of the plaintiff, or the sheriff. The construction, however, given by the court was more favorable to the defendant holding him liable only for his proportional part of the reward. This was all the plaintiff asked, and to this he was entitled, if the contract was made as charged and as the instruction given hypothetically assumes. These facts are for the jury, and we shall remand the case for the purpose of having them again submitted upon proper instructions.

The objection to the declaration may be remedied by amendment, and this renders useless any consideration of the question presented by the motion in arrest and the motion to strike out the special counts.

Judgment reversed and cause remanded.