M. B. RICHMOND, Defendant in Error, *v.* W. W. JUDY ET AL., Plaintiffs in Error.

### January 28, 1879.

1. Associations and clubs, the objects of which are social or political and not for purposes of trade or profit, are not partnerships, and pecuniary liability can be fastened upon individual members thereof only by reason of their acts or the acts of their agents; and agency is not implied from the mere fact of association, but must be proved. A course of dealing may amount to proof of original authority.

2. Individual members of such a club are liable for work done with their concurrence or subsequent approval, where the credit was given to members of the club.

3. A verdict which has evidence, though weak, to support it, will not be set aside as being without evidence to support it.

ERROR to St. Louis Circuit Court.
*Affirmed.*
McGINNIS & SEARLE, for plaintiffs in error.
W. S. STEWART and E. WHITE, for defendant in error.

BAKEWELL, J., delivered the opinion of the court.

This action was originally before a justice. The written statement of the cause of action is to the effect that defendants Judy and Cavender, together with six other persons, who were all made defendants in the original proceedings, were members of a committee for conducting

a political campaign, and, as such committee, ordered the work set forth in the bill of items filed, and, after the work was done, audited and approved the bill and severally agreed to pay the same. The bill of items is an account for posting bills advertising meetings at different places in the city and county of St. Louis, at dates from the 26th of March to the 3d of April, 1877. On trial anew in the Circuit Court, there was a verdict and judgment against defendants Judy and Cavender, and in favor of their co-defendants. The cause is here by writ of error.

Plaintiff introduced Charles E. Ware, who testified that he was a printer in the spring of 1877, during the campaign spoken of in the cause of action, and did a large amount of printing for the campaign, by order of J. R. McBeth, secretary of a meeting held at Jones's Hall under the authority of the Citizens' Committee; that McBeth signed as secretary of the Citizens' Committee. Witness was often in the anteroom, but never in the committee-room. Did not know the names of the members of the committee, except from rumor. Had heard defendants Hennessey, Judy, and Cavender say they were members of the committee. The orders for printing were received by witness from McBeth, — sometimes in writing, sometimes orally. The orders were to print bills and have them posted. All the bills in the account filed, except as to one item, were ordered by McBeth. The witness was to print the bills and send them to plaintiff to post, the posting to be paid for by witness; and plaintiff, with the knowledge of McBeth, rendered the bills to the committee. After the bills were posted, witness talked to Judy and Cavender. Judy said it was a proper bill, and should be paid. Cavender got very angry, and said that he was bothered to death with the bills that were unpaid by the committee. He did not deny the bill, but gave as a reason for non-payment that the men who had subscribed to the fund had not paid, and the money that had been counted on was not on hand. The

orders received by witness were for work needed by the committee, and were signed, " By order of the, committee. J. R. McBeth, secretary." They specified the number of bills to be printed, and where they were to be posted. Judy stated to witness that the work was properly ordered, three or four days after the publication, when witness went to collect his balance. Judy said the work was done, and the bill correct, and should be paid.

Plaintiff also introduced Kirby as a witness. The bill of exceptions states that his testimony tended to show that Judy and Cavender were members of the committee known as the Citizens' Committee, of which McBeth acted as secretary; and also tending to show that no bills were contracted by the committee, or intended to be contracted, unless the money was actually on hand with which to pay such bills. This was all the testimony.

Defendants asked an instruction in the nature of a demurrer to the evidence, which was refused. The court, of its own motion, instructed the jury that " they cannot find a verdict against any of the defendants who have not been proven to have authorized the work for which plaintiff claims compensation; but if the jury find that any of the defendants authorized the doing of the work, or, after it had been done, sanctioned the doing of the work and acknowledged its correctness, then, as to such defendants, plaintiff is entitled to a verdict."

Associations and clubs, the objects of which are social or political and not for purposes of trade or profit, are not partnerships, and pecuniary liability can be fastened upon the individual members of such associations only by reason of the acts of such individuals or of their agents; and the agency must be made out,—(none is implied from the mere fact of association.) *Bailey* v. *Macauley*, 19 L. J. (Q. B.) 73; *Wood* v. *Finch*, 2 Fost. & Fin. 447; *Delannay* v. *Strickland*, 2 Stark. 416; *Sozer* v. *Daniels*, 66 N. Y. 426; *Suckombe* v. *Carleton*, 2 Fost. & Fin. 707.

The evidence, as preserved in the record, was weak; but we think there was enough to support the verdict, and that the learned judge committed no error in refusing to take the case from the jury. There was some evidence of a course of dealing of which we think that the jury might fairly infer that the defendants Judy and Cavender were aware. This would make them parties to the orders given on behalf of the committee of which they were members. If the work was done with the previous concurrence or subsequent approbation of defendants, they and all the members of the club who stood in the same situation were liable to pay for the goods if the credit was given to the members of the club. If, however, there had been no evidence from which an inference could fairly be drawn that defendants intended that McBeth should deal for the committee on credit, or sanctioned his having done so, the case would be otherwise. Evidence tending to show that no bills were contracted by the committee unless the funds were on hand, is not evidence tending to show that no bills were to be contracted on the credit of the committee or its members. If the plaintiff had trusted solely to the state of the funds, and this had been shown, the members of the committee could not have been liable unless the funds were collected; but if the credit was given to the members of the committee, such members as were aware of the dealing and authorized or sanctioned it are undoubtedly liable.

So far as the evidence of agency goes, a course of dealing may amount to proof of original authority. The fact that defendants, when the bill was presented to them, recognized it as correct, together with the publicity of the work, go to show that defendants knew that the work was being ordered in the name of the committee of which they were members, especially as the work done was so clearly in furtherance of the object for which the committee was organized. The evidence of ratification, even though doubtful,

and susceptible of different interpretations, is properly submitted to a jury; and slight circumstances and small matters are sometimes sufficient to raise a presumption of ratification.

It may further be said that though a part of the members of a voluntary organization cannot, as a general rule, bind the others without their consent before the act which it is claimed binds them is done, or they have ratified it and adopted it with full knowledge of all the facts, yet there are cases, as is said in *Spicer* v. *Daniels*, 66 N. Y. 426, in which the objects for which the association is organized are so clear, and the acts done so essentially necessary to the furtherance of that object, that all will be presumptively bound by them without evidence of consent or ratification. Persons who organize as a campaign committee on the eve of an election may perhaps be supposed to know that their associates, in the name of the committee, will incur certain obvious expenses in giving public notice of political meetings, and to sanction such outlay by the very fact of their organization. And a person, by acting on a provisional committee, may authorize an agent to contract on his credit, if it appear from the nature and objects of the organization that a certain outlay is a necessary consequence. *Bailey* v. *Macauley, supra.* And in *Fleming* v. *Hector, supra*, one of the main reasons for holding defendants not liable, as members of the club, for debts contracted in the name of the club by the committee, was that the evidence showed that the club was formed on the ready-money principle, and the members could have no reason to suppose that the committee was purchasing on credit, and therefore the individual members could not be supposed to sanction such acts, or to have made the committee their agent for any such purpose. The rules and constitution of the club were such that the court held that the committee had no authority to pledge the personal credit of the members. On the other hand, the objects of a campaign committee are such

that it seems inevitable that the managing secretary should have authority to pledge the personal credit of the members to a certain extent, in the absence of any evidence that he was placed by them in funds for necessary expenses.

The question is purely one of agency. The instruction given by the court was as favorable to defendants as they could ask, and no reason appears for reversing the judgment. It will therefore be affirmed. All the judges concur.