# J. H. RIFFE, Respondent, v. THOMAS PROCTOR et al., Appellants.

### Kansas City Court of Appeals, May 11, 1903.

1. **Religious Societies:** ENGLISH MEANING: MASSACHUSETTS CASES: MISSOURI DOCTRINE. The term "religious society," in English ecclesiastical law, is synonymous with "parish" and "precinct," and means a corporation; and the members are therefore not liable for the debts of the society. The Massachusetts courts adopt the same doctrine, but such system is not recognized by the laws of this State and Massachusetts cases are inapplicable here.

2. ———: LIABILITY OF MEMBERS: PARTNERSHIP. "Church" and "religious society," as commonly used are interchangeable, and a Baptist church is an unincorporated religious society and the members are liable similiar in many respects to those of a partnership, especially where they participate in a particular transaction in the name of the society.

3. ———: BAPTIST USAGE: SALARY OF PASTOR: LIABILITY OF MEMBERS. On the facts in this case it is held that the members of a Baptist congregation are not liable individually for the salary of the pastor, who was employed with full knowledge of the rules and practice that his salary was payable out of the voluntary contribution of the members, notwithstanding the pastor's testimony that he accepted the employment with the intention of relying on members for his salary as per their individual apportioned share.

4. ———: ———: ———: ———: EVIDENCE: COURT OF CONSCIENCE. Evidence that it was a rule among Baptist churches to pay their salaries by voluntary contributions was competent notwithstanding the fact that under Baptist polity each church is independent and there is no common head; and besides it is common history of this State that the Baptist and other denominations alike have only one source to which they can look to pay their preachers, to-wit, the voluntary contributions of the members, and the court of conscience is the only court where such liabilities can be enforced; and if such evidence was immaterial it was because the law under the circumstances would impute to the plaintiff that knowledge which was common to all the ministers of his faith.

5. ———: CONTRACT: CONSTRUCTION. If the relation between a pastor and the church rests in contract, then each member is only liable for the amount of his subscription or apportionment as the case may be, and there is no liability for the whole salary resting upon any one member.

Appeal from Randolph Circuit Court.—*Hon. John A. Hockaday,* Judge.

REVERSED.

*W. T. Ragland, Warick McCanne* and *R. B. Bristow* for appellants.

(1)   The term "religious society" had in the English ecclesiastical law, and has in our law, a well-defined meaning. "As commonly used in our law, it is synonymous with 'parish,' 'precinct,' and designates an incorporated society, created and maintained for the support and maintenance of public worship." Weld v. May, 9 Cush. (Mass.) 181; Silsby v. Barlow, 16 Gray (Mass.) 330; 20 Am. and Eng. Ency. Law (1 Ed.), p. 773; 10 Pick. 193; 3 Me. 247.   (2)   It therefore very readily appears that no personal liability could have been incurred by defendants by reason alone of having participated in a business meeting of the corporation when and where a corporate contract was made and entered into.   This necessarily follows from a fair construction of the language of the petition "taken in its plain and ordinary meaning." Loer v. Murphy, 45 Mo. App. 579; Warrick v. Baker, 42 Mo. App. 439; Stillwell v. Hamm, 97 Mo. 579.   (3)   The petition on its face shows that the meeting at which it alleges that the plaintiff was called as pastor and the alleged contract was entered into was purely ecclesiastical in its character, and was in the exercise of ecclesiastical functions exclusively, and that defendants by taking part therein were not thereby pecuniarily bound. Paddock v. Brown, 6 Hill (N. Y.) 532; Tyler's Amer. Encl. Law, p. 103; West v. Church, 41 Minn. 94.   (4)   Defendants aver in their answer that it is an immemorial and uniform custom and usage in Baptist churches to provide for the payment of the pastor's salary solely by voluntary subscription of the members and that pastors

accept calls on the sole reliance of such voluntary contributions for the payment of their salaries, and that the individual member does not assume liability for such salary beyond his individual subscription or apportionment. That the plaintiff knew of such custom and usage at the time he was called to the pastorate of the First Baptist Church of Monroe City and accepted the call under and in accordance with this usage. Defendants offered in evidence in support of their averments, that there was such a custom and usage, general, uniform and of long standing, but the same was excluded by the court. Defendants not only were not permitted to prove what the usage and custom on this subject was, but were not even permitted to prove that any custom, or usage of the kind, existed, or whether the witness had any knowledge of such a custom. Pleasants v. Pendleton, 6 Rand. (Va.) 493; 18 Am. Dec. 726; Foley v. Mason, 6 Md. 37; Joseph v. Andrews Co., 72 Mo. App. 551; Cameron v. Real Est. Co., 76 Mo. App. 366; Fitz Simmons v. Academy, 81 Mo. 37; Kimball v. Brawner, 47 Mo. 398; Robinson v. United States, 13 Wall. 365; Cole v. Skrainka, 105 Mo. 310.

*J. C. Peirsol, J. H. Whitecotton, R. L. Woodson* and *T. P. Bashaw* for respondent.

(1)  Under the pleadings and proof the First Baptist Church at Monroe City, Missouri, is an unincorporated voluntary association or society, in which a majority rule, being a pure democracy and without any Federal head. McRoberts v. Monday, 19 Mo. App. 26. (2)  While under the old common law of England no suit could be maintained by or against such an association, but only by or against all its members. 22 Am. and Eng. Ency. of Law, 806; Curd v. Wallace, 7 Dana (Ky.) 190; Niven v. Spickerman, 12 John. (N. Y.), yet it well-settled law that individual members of an unincorporated association may become liable to outside

persons to the full extent of the obligations incurred by the association, and may be sued as such. Kuhl v. Myer, 35 Mo. App. 206; s. c., 42 Mo. App. 474; s. c., 80 Mo. App. 648; Heath v. Gobin, 80 Mo. 310; Ferris v. Thaw, 5 Mo. App. 279; Hammerstein v. Parsons, 38 Mo. App. 332. (3) Said church being a voluntary unincorporated society, organized for the promotion of the cause of Christianity, and the services of a pastor being essential to the furtherance of the objects of the church, and said church being a pure democracy, in which the majority rule, it was not even necessary, as was done in this case, to aver and prove assent to, or ratification of, the call by defendants. Sozer v. Daniels, 66 N. Y. 426; Richmond v. Judy, 6 Mo. App. 465. (4) While it is true that where the controversy is between members of an unincorporated society the courts lean towards the rules afforded by the law of corporations, yet the creditors of such an association have a right to invoke the application of the law of partnership. 22 Am. and Eng. Ency. Law, 809, and cases cited; Ferris v. Thaw, 5 Mo. App. 279. (5) It has been held that, although under the law of corporations an individual stockholder is not liable to its creditors beyond his obligations to the corporation, yet, where by the articles of association every member binds himself to pay all the debts of the association, such obligation is enforcible by every creditor of the association. Union Dist. Co. v. Loe, 47 Mo. App. 31. (6) Plaintiff can not sue the church, and if he has a claim against it he must sue its members, but he is not bound to sue all of them.

BROADDUS, J.—To facilitate a correct under-standing of the questions hereinafter considered, a reference at the threshold to the pleadings will, we think, be found helpful. The allegations of the petition may be summarized in this way, that is to say:

1. That defendants were members of a religious

society known as the First Baptist Church of Monroe City.

2. That on December 9, 1897, at a business meeting of the members of said church called for the purpose of deciding upon the question of the employment of a pastor for said church, at which meeting the members were present and participated, a resolution was duly passed by a unanimous vote to employ plaintiff on behalf of themselves and of said church, to serve said church as its pastor for an indefinite term and to begin January 1, 1898, and to be terminated by either party on giving three months notice to the other of a desire to terminate such employment.

3. That defendants on behalf of themselves and said church, at said meeting, did employ plaintiff and agree to pay him $800 per annum for his services so to be rendered, to be paid in monthly installments of $66.66 2-3 after January 1, 1898.

4. That plaintiff was at the time of his employment and ever since has been a duly ordained minister of the gospel of the Baptist denomination, the same as that of said church.

5. That plaintiff at said meeting accepted said employment and in pursuance thereof on January 1, 1898, entered upon the discharge of his duties as such pastor and from thereforward until January 1, 1900, faithfully served said church and discharged all the duties of his pastorate according to said contract of employment.

6. That he (plaintiff) had been paid in full for his said services to July 1, 1899, and that the six months' salary due him from the last named date until January 1, 1900, amounting to $400, less $8.54, remained unpaid, etc.

The answer of the defendants expressly and in effect impliedly admitted (1) that the said First Baptist Church was an unincorporated religious society; (2) that the plaintiff was an ordained minister of the

gospel of the Baptist denomination; (3) that he (plaintiff) had been employed at the salary, had rendered the service and the amount of said salary claimed remained unpaid as alleged in his petition. As suppletory to these admissions, the answer further pleaded that the plaintiff was called as pastor for said church under church rules and regulations of which he had full knowledge and to which he consented, that is to say, an apportionment or assessment was made annually upon the membership of said church, by a board of deacons, duly authorized by the rules and regulations of said church and that such apportionment and assessment was so made during each year while plaintiff served said church and was collected and paid into the church treasury and by the treasurer paid out on the order drawn by the church clerk to the parties entitled thereto, under the rules and regulations of the church providing therefor; that plaintiff was a member of said church at the time the call was made and accepted by him and that he well knew the ways and means provided for the payment of his salary, as pastor, as provided by said rules and regulations of said church, and accepted the call of pastor of said church in contemplation of the means so provided and relied solely thereon for the payment of his services as pastor. The reply controverted these suppletory allegations.

But the defendants contend that since the petition alleges that the "First Baptist Church" is a "religious society," and since the term "religious society" had in the English ecclesiastical law, and has in our law, a well-defined meaning, and as commonly used in our law it is synonymous with "parish," "precinct" and designates an incorporated society created and maintained for the support of public worship; that therefore the defendants incurred no personal liability by reason of their alleged participation in the business meeting of the corporation at which the plaintiff was employed as pastor; and as supporting their contention, refer us to

the following Massachusetts cases:' Weld v. May, 9
Cush. (Mass.) 181; Silsby v. Barlow, 16 Gray (Mass.)
330. In McRoberts v. Moudy, 19 Mo. App. 26, Judge
PHILIPS, in referring to the opinion of Chief Justice
PARKER in Baker v. Fales, 16 Mass. 488, remarks: "A
careful reading of that opinion and others in Massachu-
setts following the precedent, show that the ruling is
made to depend mainly on the peculiar history and
usages of the parish organization in respect of this re-
ligious denomination in the New England States, as
well as certain legislation in relation thereto. While,
as the name indicates, those churches are, in a measure,
independent associations, yet, in that State, from time
immemorial, they have been so allied and interwoven
into the parish system as to be regarded as a part of
the parish." It is needless to say that the parish sys-
tem with its ecclesiastical relations as it exists in New
England, is not recognized by the laws of this State;
and it inevitably follows that the Massachusetts cases
relied on are inapplicable here.

In Baptist polity, as it exists in this State, there
is no distinction between a "church" and a "religious
society." These terms as commonly used in our law
are interchangeable. There is no term used in the peti-
tion which implies that the church society therein named
was incorporated. We discover nothing in the lan-
guage of the petition to justify the conclusion that the
contract of employment therein alleged was entered into
with a corporation rather than with a voluntary unin-
corporated religious society. As the said Baptist
church was but an unincorporated religious society,
having none of the elements or qualities of a legal en-
tity, it was incapable of suing or being sued, pleading
or being interpleaded, contracting or being contracted
with. Blakely v. Bennecke, 59 Mo. 193.

The church could not be sued for the reasons al-
ready stated. In such case, are the members who par-

ticipated in the business meeting employing him, per-
sonally liable to plaintiff, and if so on what principle?
In Ferris v. Thaw, 5 Mo. App. 1. c. 286, it was said
that certain societies, not constituted for any purpose
or profit, are exposed to liabilities similar in many re-
spects to those of a partnership. All parties who take
an active part in working out a project, who attend
meetings at which resolutions are made, or orders given
for the supply of goods in furtherance of a joint under-
taking, are, in general, jointly responsible. The act
of the secretary of a voluntary association will not bind
the board, but it will bind any of the members who were
present at a meeting and concurred in giving the au-
thority to the secretary. When members of a voluntary
association authorize its officers to engage in a partic-
ular transaction in the name of the society, as they do
not bind the society as a body, or give to persons in-
terested a tangible third party against whom they can
proceed, they are themselves the only persons that can
be sued and are in fact principals in the transaction.
And to same effect in Richmond v. Judy, 6 Mo. App.
465.

It is quite well settled that although a party may
be a mere agent and known to be such, yet if he contracts
in his own name, or in his name as agent when his prin-
cipal is *incapable* of contracting or is *irresponsible,* the
law presumes he intends to bind himself. The justice
of this rule rests on the principle that otherwise the
party performing the service would be remediless. If
the agent in such case would stand exonerated he must
disclose a responsible principal. Lapsley v. McKinstry,
38 Mo. 245; Heath v. Goslin, 80 Mo. 1. c. 317. The ap-
plication of the doctrine that the members of voluntary
societies may become individually responsible to out-
side persons to the full extent of the obligation incurred
by the society is variously illustrated by a great variety
of analogous cases. Blakely v. Bennecke, ante; Furni-
ture Co. v. Crawford, 127 Mo. 1. c. 364; Smith v. War-

den, 86 Mo. 399; Martin v. Fewell, 79 Mo. 411; Anderson v. Stapel, 80 Mo. App. 1. c. 123-4; Hotel Co. v. Furniture Co., 73 Mo. App. 135; Furnace Co. v. Bodwell, 73 Mo. App. 393; Fay v. Richmond, 18 Mo. App. 355; Glenn v. Bergmann, 20 Mo. App. 343; Ziegler v. Fallon, 28 Mo. App. 1. c. 298. In Lapsley v. McKinstry, ante, it was said that the person who assumes to contract as an agent, must see to it that his principal is legally bound by his act; for if he does not give a right of action against his principal the law holds him personally responsible. And although the agent, at the time he makes the contract, discloses the fact that he is acting for a named principal, this does not necessarily exclude the idea that he intends to bind himself personally. Hovey v. Pitcher, 13 Mo. 191; Einstein v. Holt, 52 Mo. 340.

But admitting the full force of the doctrine established by the foregoing authorities, it is denied by defendants that it has any application to the case at bar for the reason that it was not the understanding of the parties that the defendants, either collectively or severally, were binding themselves to pay plaintiff's salary; and that when he accepted the position of pastor he did so with the full understanding that a fund would be raised by the voluntary contribution of the members to which alone he could look for his compensation. And we believe that defendants' contention is the only legitimate conclusion to be derived from the facts of the case. The record clearly shows that the plaintiff was not employed as pastor for the church at Monroe City with the intention of creating a personal liability upon the members. On the contrary, it seems to us that it was definitely understood that no such liability was to be incurred. It was shown that the plaintiff, prior to the time he was called to preach for the church, was fully informed of the manner in which his salary would be raised and paid. It was as follows: It was the duty

of the board of deacons for the church, together with its clerk, to meet at a stated time every year, at which time they were required to estimate the total amount which might become necessary to pay all expenses of the church for the following year, upon which amount they should add ten per centum. After having made such estimate, the amount thus ascertained would be apportioned among the resident members of the church, according to the ability of each member to pay his respective apportionment. And it was further pro-vided that thereafter the deacons should hold another meeting to hear complaints from objecting members, if any, made against them for unfair apportionments and to adjust them. It will thus be seen that the funds provided for church expenses including that for the salary of its pastors, were to be raised in a particular manner—that of voluntary contribution: for no one will contend that an apportionment so made had any binding legal force upon a member. And it was further shown that in the event these apportionments were not all collected, it was the common practice of the most wealthy and liberal members to supply the deficiency from their own means. With a full knowledge of the rule and practice of the church in paying the salary of its pastors, the plaintiff accepted the call made by the church meeting at a salary of $800 a year, to be paid monthly, at which time nothing was said or done to indicate that he would be paid in any other way than, as he had been previously informed, by apportionment upon the individual members.

It is true, the plaintiff testified that he did not accept the employment with the intention of relying on the individual members for his salary as per their individual apportioned share, but he must have known that it was not the intention of the member to bind himself jointly as well as severally, and with such knowledge plaintiff was in duty bound to make known on what terms he accepted the employment. And had he

then insisted upon what he urges here, that he considered the employment joint as well as several, I am satisfied he would never have been employed as pastor. Defendants offered to prove on the trial that it was a rule among the Baptist churches to pay the salaries of the preachers by voluntary contributions. This offer was objected to by plaintiff, and the evidence excluded. It is argued that such evidence was incompetent as each church of the Baptist denomination was a distinct organization with no head, and no official connection, one with the other, under a general organization. Such is the historical fact, but by reason thereof it does not necessarily follow that by force of custom these separate entities do not in the main agree in their policies, and particularly in their manner of raising funds for church expenses. In fact, the evidence offered was to show that they did. It is not only a matter of the common religious history of this State that the Baptist church, but that other denominations, also, have only one source to which they can look for money to pay for their preachers, and that is, as has been said, by the voluntary contribution of members. The object of the proffered testimony was to show that plaintiff had such knowledge. But perhaps the evidence was immaterial as the law would, under the circumstances, impute to the plaintiff that knowledge which was common to all the ministers of his faith. In this country the Church and State are separated by the Constitution, and no citizen can be taxed to support the Church, as in other countries. The Church, or Churches, therefore were compelled to resort to some mode by which to raise funds for the furtherance of their pious purposes; and the result has shown that only one mode was available, viz., voluntary contribution. And I feel safe in challenging the ecclesiastical history of the State to produce a single instance in which it was ever claimed that the employment of a minister by the assembled members of a particular church created a joint, or, in fact, any

liability whatever. Immemorial custom, which has the force of law, has created a forum in which undertakings of this kind are enforced, to-wit: that of the conscience of the member of the church. The preacher relies upon each member to do his part, every one according to his ability, as blessed with worldly goods. Absence from the records of our courts of suits to compel payment of the pastor's salary is the highest evidence that this pious obligation of the members has been well performed. That the law of usage and custom in that respect has been of such binding force upon the conscience as to find no parallel in efficacy in the laws of the land at large. From the very nature of things, the churches, stripped of the power of demanding tithes, were compelled to resort to the usage now so universal, and, I might add, inevitable. It is the ecclesiastical law especially of the Baptist church, binding alike upon the shepherd and upon the flock.

But even admitting the undertaking to have been a contract upon principle, it stands with that of Davis-Rankin v. Hendrix, 59 Mo. App. 448, wherein plaintiff had agreed for a consideration of $4,900 to erect a butter and cheese factory at Cowgill, Missouri, upon the completion of which numerous individuals, among whom were the defendants, agreed in writing to pay the above amount; and they further agreed that when the amount mentioned had been subscribed they would incorporate under the laws of the State, the stock to be divided into shares of $100 each. This contract was signed by Davis and Rankin, after which it was signed by the different individuals, but each one writing a certain amount opposite his name. The court in its construction adopted the rule found in Addison on Contracts, viz.: "In the construction of contracts, the court will look at all the circumstances of the case, the nature of the property, the occupation and relation of the parties, the usage of the place, and of the business to which the contract relates, and ascertain, by reasonable inference, what the

parties must have understood and mutually expected at the time of the making of the contract, and then adopt that construction which will best and most nearly carry the contract into effect as they intended and understood it.'' Notwithstanding the defendants in a general way had incurred a joint liability, the court held all the circumstances went to show that it was not the intention of the defendants to incur such liability; that it must have been so understood by all the parties.

As has already been said, there can be no question but what the church member at the time of plaintiff's employment had no intention of binding himself for the whole of the preacher's salary, and the plaintiff knowing such to have been the case, the undertaking at most created an obligation, if any, upon such member to pay his apportional share only of such expense.

We have not noticed several important questions raised on the appeal for the reason that as the plaintiff was not entitled to recover upon the record, it is unnecessary to discuss them. We think the cause should be reversed, and it is accordingly so ordered. All concur.