WESTERN CEMENT COMPANY, Appellant, *v.* ROBERT L. JONES ET AL., Respondents.

### February 24, 1880.

1. The guardian of a lunatic has no power, as such, to engage in business for, or, by transactions pertaining to such business, bind the estate of the lunatic; nor can the Probate Court confer such power.

2. Where the mistake as to the principal's liability is one of law, all parties having full knowledge of all the facts, that the principal cannot be held does not make the agent liable.

3. The guardian of a lunatic cannot be held personally liable for goods furnished him for the use of the lunatic's estate, where no misrepresentations were made and the seller had full knowledge of all the facts.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

WILLIAM H. HORNER, for the appellant; An insane person is bound by contracts made by or for him, unless advantage was taken of his infirmity.—Add. on Con. (2d Am.

ed.) 90. The guardian consented, and that is all the statute required. — 1 Wag. Stats. 715, sect. 32. Where a person assumes to act for or in behalf of another without authority, an action can be maintained on the contract against the person improperly acting as agent. — Green's Brice's Ultra Vires, 633, *635; *Byars* v. *Doores*, 20 Mo. 284; *Lapsley* v. *McKinstry*, 38 Mo. 247; *Blakely* v. *Bennecke*, 59 Mo. 193; *Wright* v. *Baldwin*, 51 Mo. 269, discussing *Smout* v. *Ill-berry*, 10 Mee. & W. 1; 1 Pars. on Con. (6th ed.) *67, notes *v, w;* Whart. on Ag., sect. 523; *Hill* v. *Banister*, 8 Cow. 31; *Grafton Bank* v. *Flanders*, 4 N. H. 239. There was no evidence as to intention of plaintiff to hold Locke only at the time of purchase, and it was improper to put before the jury the immaterial question as to the insanity of Locke, as Jones is liable if he had no principal capable of making contract. — *Lapsley* v. *McKinstry*, 38 Mo. 247; 44 N. H. 196; *Bay* v. *Cook*, 2 Zab. 343. Under the law of Missouri, no guardian or administrator can conduct business so as to create debts against the estate of a minor, lunatic, or decedent; and he is personally responsible for debts so created. — *Blakely* v. *Bennecke*, 59 Mo. 193; *Wright* v. *Baldwin*, 51 Mo. 269, citing 10 Mee. & W. 1 (37 Eng. Law & Eq. 275); *Presbyterian Church* v. *McIlhenny*, 61 Mo. 540; *Rittenhouse* v. *Ammerman*, 64 Mo. 197; 1 Wag. Stats. 714, sects. 19, 20, as to insane persons; *Farrar* v. *Dean*, 24 Mo. 19; *Woods* v. *Boots*, 60 Mo. 546; *Thatcher* v. *Dinsmore*, 5 Mass. 299; Whart. on Ag., sect. 523; *Mott* v. *Hicks*, 1 Cow. 536; *Hill* v. *Banister*, 8 Cow. 31.

A. R. Taylor, for the respondent Jones: The guardian, having as such purchased the goods, cannot be held individually liable for them. — *Aspinwall* v. *Torrance*, 1 Lans. 381; *Walker* v. *Bank*, 9 N. Y. 582; *Dung* v. *Parker*, 52 N. Y. 494; *Balzer* v. *Nicolay*, 53 N. Y. 467. But where the powers of the agent are *fixed and limited* by public act or law (as in the case at bar), and both parties are *presumed*

*to know the law*, there is no liability of the agent, either on the contract or for *breach of warranty.* — Green's Brice's Ultra Vires, 637, note; *Rashdall* v. *Ford*, L. R. 2 Eq. 750; *Rittenhouse* v. *Ammerman*, 64 Mo. 199. If the mistake is one of law, both parties are held to know the law, and the agent is not held. — *Coneger* v. *Whittington*, 26 Mo. 213; Story on Ag., sect. 265; *Lander* v. *Castro*, 43 Cal. 497; *Bartlett* v. *Tucker*, 104 Mass. 337; Whart. on Ag., sect. 529; *Smout* v. *Illberry*, 10 Mee. & W. 1; *McGregor* v. *Railroad Co.*, 18 B. Mon. 618.

CASTLEMAN & LAUGHLIN, for the respondents Locke and Lancaster: A lunatic is incapacitated from contracting. — 1 Coll. on Lun. 376; 1 Story on Con., sect. 36; 2 Washb. on Real Prop. 558, chap. 4, sects. 1, 15.

HAYDEN, J., delivered the opinion of the court.

This is a suit on an open account to recover the price of cement delivered. Locke, one of the defendants, who had been in the habit of buying cement from the plaintiff, was duly adjudged insane, and the defendant Jones qualified as his guardian and continued to carry on his business, making profits for which he accounted in the Probate Court. In 1876, the plaintiff, at the request of Jones, who to plaintiff's knowledge was acting for the estate and as guardian only, delivered the cement to Jones, who used it for the estate. Afterwards Jones, who is here sued individually, resigned his guardianship, and Lancaster, here joined as guardian, was appointed such. Judgment is asked against Jones, and against Lancaster as guardian. Locke, by guardian, made a general denial. Jones pleaded that he carried on the business by order of the Probate Court, and that plaintiff knew he was acting only as guardian of an insane person, and dealt with him as such. The court ruled that the plaintiff could not recover as to Locke, and, upon instructions given, the plaintiff took a nonsuit generally.

There can hardly be said to be any dispute as to the facts

here, but so far as there is any, those inferences must be drawn which support the judgment. It is clear that the plaintiff knew that Locke was insane, and dealt with Jones only as guardian. Indeed, the petition alleges the adjudication of lunacy and appointment of Jones; that Locke was confined in an asylum, and that Jones had complete charge and assumed to act as agent for Locke, and conduct the business formerly conducted by him, appropriating the cement to Locke's business. There is no evidence tending to show that the plaintiff looked to Jones otherwise than as guardian, or expected to hold him in any other capacity. The exact facts were before the plaintiff as they afterwards appeared at the trial. Jones was guilty of no pretences or concealment; and it was the plaintiff who trusted, not Jones, or any third person, but the estate. This being so, there should be no difficulty as to the law of the case. The assumption of the plaintiff that Jones is bound to furnish a principal or become legally responsible himself, has no basis. It was the plaintiff who, not knowing the law, chose to act without taking advice; or who, knowing the law, preferred, rather than not sell his goods, to deal where there was no legal obligation, and who, consequently, must abide his own act.

Where an agent acts without authority, or exceeds his authority, and thereby deceives the other party, the agent is guilty of a wrong, and case for the tort was formerly the remedy. Though *assumpsit* now lies on an oral contract, yet where the contract is written, and contains the name of the principal only, case is still the proper remedy. But whether the proceeding is in tort or contract, the ground on which the agent is held is his wrongful conduct, unless there is some act on his part implying a contract, as where his language imports a personal liability. The analysis of Baron Alderson in *Smout* v. *Illberry*, 10 Mee. & W. 1, shows that the element of wrong, though it assumes different shapes, exists as well in the class of cases put by him, where

the party making the contract as agent *bona fide* believes that the authority is vested in him, but has in fact no such authority, as in the other classes described. After saying that the conduct of the agent in that class of cases is a wrong, differing in degree but not in essence from cases of admitted wrong, that eminent judge adds : "And if that wrong produces injury to a third person, who is wholly ignorant of the ground on which such belief of the supposed agent is founded, and who has relied on the correctness of his assertion, it is equally clear that he who makes such assertion should be personally liable for its consequences."

This implies some misapprehension of fact on the part of the party who deals with the supposed agent, into which misapprehension such party has been led by the unwarranted assumption or pretence of the agent. If there is no misapprehension of fact, and no assumption or pretence on the part of the agent, it is obvious the basis of the liability does not exist. If the exact grounds upon which the agent acts are as fully known to the party with whom he acts as to the agent, and there is acquiescence in the state of things, not as supposed to be, but as they are, on the part of the party dealing with the agent, the attempt of such party to charge the latter as a principal is virtually a repudiation of that party's own acts. The legal difficulty is rather in words than in things. It is anomalous to speak of an agent who has no principal behind him. But if one chooses to furnish goods to a person who is not to be held personally liable, and who represents, as the creditor knows, a principal against whom the law gives no remedy, the consequences which follow are the legitimate results of the bargain that was made. The plaintiff here may have been perfectly willing to trust to those chances of payment which exist apart from any legal obligation, as those who deal with persons under disabilities often are ; or he may have thought that the estate was liable, and so have erred

through a mistake of law. In either case he has no remedy against Jones, in whose dealings with him there is no element of wrong, or act or representation out of which a personal liability can arise.

What has been said distinguishes the case at bar from the cases cited in the plaintiff's brief, and it is necessary to notice only a few of these. *Weare* v. *Gove*, 44 N. H. 196, is an action on a note, and the court proceeded upon the basis that, stripping the language of the unauthorized expressions, there remained enough to bind the supposed agent. It is there said that a full knowledge of all the facts on the promisee's part might render the rule of that case inapplicable. *Meeh* v. *Smith*, 7 Wend. 315, and *Feeter* v. *Heath*, 11 Wend. 485, are cases where the conduct of the agent was already wrongful. In *Lapsley* v. *McKinstry*, 38 Mo. 245, a personal liability was inferable from the conduct of the agent in whose name, by his consent, the account was kept. The case of *Bay* v. *Cook*, 22 N. J. L. 349, is more nearly like the present case. It seems to follow the case of *Mott* v. *Hicks*, 1 Cow. 513, without adverting to the difference of facts. But in *Bay* v. *Cook* the promisor was a public officer, and in that case, as in the case at bar, the position of the supposed agent was a matter of public law. The plaintiff there thought he had a legal remedy against the township; and from the charges he made, and from his conduct, it might have been inferred that plaintiff looked only to the township, though there was no direct evidence, as there is in the case at bar, to show that the plaintiff looked only to the principal and not to the agent. Yet, as in *Bay* v. *Cook*, there was nothing in the nature of wrong, and nothing implying a personal promise; and as the non-liability of the principal to whom the plaintiff trusted was a matter of law, it is doubtful how far this case can be defended on principle. It seems contrary to the more recent and better considered decisions, which hold

that where all the facts are known to both parties, and the mistake is one of law as to the liabilty of the principal, the fact that the principal cannot be held is no ground for charging the agent with liability. *Walker* v. *Bank*, 9 N. Y. 582 ; *Aspinwall* v. *Torrance*, 1 Lans. 383 ; *Dung* v. *Parker*, 52 N. Y. 494 ; *Balzer* v. *Nicolay*, 53 N. Y. 467 ; *Rashdall* v. *Ford*, L. R. 2 Eq. 750. See *Carriger* v. *Whittington*, 26 Mo. 313 ; *Polhill* v. *Walter*, 3 Barn. & Adol. 114 ; Story on Ag., sect. 265 ; Whart. on Ag., sects. 529, 530 ; Green's Brice's Ultra Vires, 637, and note.

The trial court did not err in holding there could be no recovery against the estate, or in excluding the evidence offered tending to show that the defendant Jones, in purchasing the cement, was acting under authority from the Probate Court. There was no pretence that any such order was necessary as a temporary order to preserve the property of the estate, or to make it available for purposes of sale or otherwise. With special exigencies of this character we are not here concerned ; and it is clear that in no other cases has the Probate Court any power to permit the guardian of an insane person to continue business for his ward, even if we concede that that power would be necessary for the proper preservation or disposition of the property in any case. The section relied on, to the effect that the County Court shall have the full power to control the guardian of any insane person in the management of the person and estate and the settlement of his accounts, gives no such power as that claimed, nor does any other section. Wag. Stats. 712 *et seq*. Compare p. 672 *et seq*. It was wholly immaterial that the business as conducted by Jones, as guardian, was profitable to the estate. As a matter of law, he had no power to engage in it as guardian, or to bind the estate by transactions pertaining to any such business.

There was no error in any ruling of the court below, and the judgment will be affirmed. Judge BAKEWELL concurs ; Judge LEWIS is absent.