Heath v. Goslin.

HEATH v. GOSLIN *et al.*, *Appellants.*

1. **Voluntary Association:** CONTRACT: PERSONAL LIABILITY OF MEMBERS. The members of a voluntary association of individuals, organized for educational purposes, which contracts for the services of a teacher, are personally liable for her wages, in the absence of any agreement or understanding of the parties to the contrary.

2. **Practice:** REPLY: FAILURE TO FILE. Where a cause has been tried on the theory that a reply has been filed putting in issue the new matter of the answer, the omission to file such reply cannot be taken advantage of on an appeal.

*Appeal from Holt Circuit Court.*—HON. H. S. KELLEY, Judge.

AFFIRMED.

The following were the declarations of law given at plaintiff's instance and referred to in the opinion:

1. If it appear to the court sitting as a jury, from the evidence, that on or about the 20th day of June, 1878, Asher Goslin, on behalf of himself as president of the Northwest Missouri Normal School and his co-defendants, T. C. Dungan, Wm. Hawkins, Wm. Kaucher, and Wm. A. Gardner, contracted with and employed Alice Heath, plaintiff, to teach a department in said Normal school during the next school year beginning on the first Monday in September, 1878, and to end June 12th, 1879, and agreed to pay her $800.00 for her services, and she, the plaintiff, did then and there accept said offer and terms of said contract and did in accordance with the terms of said contract, enter upon the discharge of the duties as teacher of said department, in said school, on said day of September, 1878, and teach until the close of said school year, June 12th, 1879, and that at a meeting of defendants, as such Normal board, November 30, 1878, said board ordered Wm. Hawkins, secretary, to draw up a contract with Miss Alice Heath for her services as assistant teacher for said school year at $800.00 for the year, and that they, the defendants,

ordered and directed Wm. Hawkins at divers times to issue warrants for her services, and such warrants were issued to the number of four, for $200.00 each, and that defendant, T. C. Dungan, as treasurer for defendants, paid the sum of $501.15, to her, all of such acts will be considered as affirming and ratifying said contract made by Asher Goslin, and the finding should be for the plaintiff in the sum of ——— dollars, with interest from June 12, 1879, to the close of said school year, as the contract thereby becomes the contract of all and each defendant.

2.   It is conceded that defendants were not a corporation, or a partnership, or a company, but that they were a committee or association organized for educational purposes, to carry on the Northwest Missouri Normal school and to devise ways and means to carry on said school and in that capacity to hire teachers and to provide for the payment thereof, and that they have no resources for raising money or means whereby to defray the expenses of said school; and if the court sitting as a jury, finds from the evidence that the defendants as such committee or association, contracted with or agreed to pay plaintiff the sum of $800.00 for her services as teacher for the school year, beginning first Monday in September, 1878, and that she in good faith entered upon and performed said contract on her part, then the court should find the defendants liable for such part of said sum of $800.00 as still remains unpaid and their liability is as individuals, not as a company, corporation, or board.

   *T. C. Dungan pro se*, and *T. H. Parrish* for appellants.

   The matter contained in defendants' answer, if true, was a complete defense, and plaintiff having failed to reply, it stood admitted, and the finding of the court should have been for defendants.   R. S. 1879, §§ 3525, 3526, 3545; *Phillips v. Jones*, 20 Mo. 65 ; *Emory v. Phillips*, 22 Mo. 499, 501; *Tomlinson v. Lynch* 32 Mo. 160; *Marshall v. Ins. Co.*, 43

Heath v. Goslin.

Mo. 586 ; *Bartholow v. Campbell*, 56 Mo. 117 ; *Kansas City, etc., v. Sauer*, 65 Mo. 278. This case does not fall within the rule announced in the cases of *Smith v. City, etc.*, 45 Mo. 449 ; *Henslee v. Canafax*, 49 Mo. 295 ; *Howell v. Reynolds Co.*, 51 Mo. 154 ; for the defendants raised their objections at every stage of the proceeding. The petition failed to state a cause of action. The authority of defendants to make the contract should have appeared from the petition. *Field v. Railroad Co.*, 76 Mo. 614. The declarations of law for plaintiff were wrong. *Childress v. Cutter*, 16 Mo. 24 ; *Hail v. Palmer*, 5 Mo. 403 ; *Morrissey v. Wiggins Ferry Co.*, 47 Mo. 521 ; Starkie's Ev., (8 Am. Ed.) § 298 ; 2 Greenleaf Ev., §§ 483, 484 ; *Brown v. Pearson*, 8 Mo. 159 ; *Kuhn v. Weil*, 73 Mo. 213 ; Story on Part., p. 128. If the plaintiff agreed to teach, knowing at the time from what source her pay was to come, and expected or agreed to look to that source, and did not expect to hold defendants individually, she cannot recover. *Tutt v. Hobbs*, 17 Mo. 486 ; Story on Part., § 130 ; Collyer on Part., 938 ; *Taylor v. Zipp*, 14 Mo. 482 ; *Bolls v. Perry*, 57 Mo. 449 ; *Spurlock v. Sproule*, 72 Mo. 503 ; *Acton v. Dooley*, 74 Mo. 63 ; *Helmes v. Stewart*, 26 Mo. 529 ; *Munson v. Sylvester*, 42 Ind. 106 ; Ewell's Evans Agency, side page 300.

*James Limbird* for respondent.

The finding and judgment of the court below is sustained by the pleading and evidence. The citizens of the town of Oregon could not be sued. There was no tangible principal behind defendants who could be reached and held liable, and, therefore, defendants were liable. 1 Parsons on Contracts, (6 Ed.) p. 124; *Ib.*, p. 146 ; Story on Agency, (8 Ed.) §§ 275, 279, 282, 283, *et seq; Hovey v. Pitcher*, 13 Mo. 191 ; *Thompson v. McCullough*, 31 Mo. 224 ; *McClellan v. Parker*, 27 Mo. 162 ; *Lapsley v. McKinstey*, 38 Mo. 245 ; *Einstein v. Holt*, 52 Mo. 340 ; *Blakely v. Benecke*, 59 Mo. 193 ; *Ferris v. Thaw*, 72 Mo. 445.

PHILIP, C.—It appears from the pleadings and proofs that in 1874 the defendant, Goslin, who was connected with the public schools of the town of Oregon in Holt county, and the other defendants and citizens of said town, conceived the project of establishing, in connection with the public school system of the community, a high grade school after the fashion of a Normal school, to be known as the "Northwest Missouri Normal School." To that end a public meeting of the citizens was called, and measures were inaugurated to accomplish the purpose. Defendant, Goslin, as principal of the public school, was to have charge of the Normal department. As a means of raising the necessary funds for its conduct, the tuition was fixed at $30. A public subscription was to be made of $30 by each subscriber, to be held and used as a guaranty fund, subject to assessment to pay any deficit consequent upon a failure to realize from patronage a fund sufficient to defray the expenses of running the Normal department, added to which the school board of the public school furnished $1,000 per year out of the public funds, and the use of the public building, fuel, etc.

The defendants were appointed a committee, known as "The Board of Regents," to take charge of the school and conduct its affairs.

The school was opened and conducted for the years 1877, 1878, and 1879. The plaintiff was employed by defendants, as such board, for the years 1877 and 1878 as a teacher, and paid by them. For the term to begin September, 1878, ending June, 1879, Goslin, as president of the board, applied to the plaintiff to renew the engagement with her as teacher for that term. They had paid her $800 the year before. Goslin tried to get her to take less for the year in question. She declined, and thereupon he engaged her on the part of the board at the sum of $800. She rendered the service accordingly. The board paid her $400 in money for the first and second quarters, and for the

third and fourth quarters they gave her orders, signed by defendant, Goslin, as president, and the defendant, Hawkins, as secretary, on the treasurer for $200 each, on which they made payments, leaving a balance of $298.85, and interest, unpaid. To recover this sum this suit is brought.

The court sitting as a jury, found for the plaintiff, and rendered judgment accordingly. The defendants have appealed.

I. The contention of the defendants chiefly, is that the contract in question was not a personal undertaking on their part, but they were acting for the public, and the plaintiff rendered the service depending upon the fund that might come from the sources indicated in the feregoing statement.

The controlling question then is, to whom did the plaintiff give the credit, and whom did the defendant understand her to be crediting? If, as a matter of fact, it was so understood by both parties as to become a part of the contract that the so-called board of regents were not to be responsible in any event to this teacher for her agreed wages, they would not be bound, although there was no responsible principal behind them. Enough is shown by the record to conclude that the plaintiff, when she performed the service, knew the origin of this school, and the source from which the board expected its pecuniary sustenance. It is also true that she testified she did not expect the defendants individually to pay her. But she further testified, to what would seem to be the plain, common sense idea all the parties must have entertained, that she was employed by the board, and "expected the board—the defendants—would provide the means with which to pay me; I had nothing to do with the matter of raising the money; I did not agree to look to any particular fund or source for funds; the board hired me and agreed to pay me; I supposed they would raise the money in some way; I did not agree to take any pay, or rely on any contingent fund or anything of the sort; they employed me and agreed

to pay me, and I looked to them for pay and not to any-body else or any particular fund."

There were other facts in evidence too, which, in our opinion, entitled the plaintiff to have the issue submitted to the jury as to whether the defendants were personally answerable. Prior to this year in question the defendants had employed the plaintiff and paid her as a board. The contract had for one year been reduced to writing, and it seems to have been the purpose and desire of both parties to reduce it to writing for this year. It was delayed and neglected. The secretary of the board drew up and signed the contract, but it was not completed by receiving the signatures of all the parties.

One or two of these defendants make the point that they did not authorize the acting president of the board to make the contract, and one of them claims that, notwithstanding the minutes of the meeting kept by the secretary shows he was present, that in fact he was not present when the contract was drawn up and warrants issued to plaintiff on account of her salary. Pretermitting any discussion of the question raised as to whether this being a voluntary association, and not a body corporate, the minutes kept by the acting secretary are competent evidence against one not present and assenting thereto, there is ample in the case to submit to the jury from which the knowledge and co-operation of all the defendants might be justly inferred. They were the acting board, entrusted with the management of the school. They had been for years employing and paying this woman. They knew she was continuing to teach and being paid out of the funds. They had not withdrawn from their self-imposed office as a managing board.

This precise question was presented in *Doubleday v. Muskett*, 7 Bing. 110. The defendants there consented to become directors, and attended meetings as such, of a projected water company, for which an act of parliament was to be obtained for its incorporation. The defendants, after

attending one or more meetings, failed to appear further. It was held, although no act of parliament was had, and the project failed, they were responsible for works ordered at subsequent meetings of the projectors which they did not attend, having done no act to divest themselves of their character as parties concerned in the movement. To whom did or could the plantiff in the case at bar look for pay but to the parties employing her? Who could she have sued but them? Back of them was no responsible principal. The people of the community, in whose interest the board now claim they were acting, were inaccessible. As was said by SHERWOOD, J., in *Blakely v. Bennecke*, 59 Mo. 195: "He was personally chargeable even on his own showing    *    *    unless he had disclosed a responsible principal. But in this case there was no principal, either responsible or otherwise, to disclose. Company "I" was incapable of suing or being sued; it possessed none of the elements or attributes of a legal entity."

Indeed it cannot be affirmed that the intangible public authorized this board to employ the plaintiff. The mass meeting simply devised a plan by which they hoped the project would succeed. They promised nothing. The individuals who should subscribe to the fund merely bound themselves to the extent of their individual subscription, and no further. The board of regents accepted the tendered office of managers, and undertook to conduct its affairs, relying upon tuitions, subscriptions and the $1,000 annuity from the public school fund to meet its expenditures. They, and not the plaintiff, are the parties to raise this fund. And if they discovered they could not succeed, it was their plain duty to have advised their employe of the fact, so that if she continued it would have been at the risk of procuring the funds for her payment from other source than the individual liability of the board. Had the people subscribed a certain sum to promote the project, to be paid annually, or otherwise, and the defendants had engaged the plaintiff with the understanding that they were the mere

agents of this public body to disburse the fund subscribed, she could not have held them personally bound. *Tobey v. Claflin*, 3 Sumner 379 ; *Parrott v. Eyre*, 10 Bing. 283 ; Story on Agency, 287. On the other hand, it is well settled that, although a party may be a mere agent, and known to be such, yet if he contracts in his own name, or in his name as agent when his principal is incapable of contracting, or is irresponsible, the law presumes he intended to bind himself. Story on Agency, §§ 281, 282.

The justice of this rule rests on the principle that otherwise the party performing the service would be remediless. If the agent, in such case, would stand exonerated, he must disclose a responsible principal. *Lapsley v. McKinstry*, 38 Mo. 245, and authorities therein cited.

In *Horseley v. Bell*, 1 Brown Ch. 101, it was held that, even where certain persons were appointed commissioners under an act of parliament for making a river navigable, with power to raise money on tolls for work being done, and the commissioners declined paying for this work upon the ground that no funds were left, the commissioners were personally bound upon the ground that the credit was given to them. So in *Cullen v. Duke of Queensberry*, 1 Brown Ch. 101, it was held that where the committee of a voluntary society entered as such into a contract with tradesmen for business to be done on behalf of the society, the funds proving insufficient, all the acting committee were personally answerable, on the ground that the credit must fairly be presumed to be given to them rather than to the subscribers at large.

The case of *Tutt v. Hobbs*, 17 Mo. 486, is not parallel. There the trustees were acting *virtute officii*, and contracted as such under the law of their creation. Back of them was a responsible principal. Their duties were prescribed by law, and Tutt knew that the fund to which he could alone look for pay was provided by law, and the trustees and commissioner were the mere agents of the law for its proper disbursement.

II.   It is insisted by appellants that the plaintiff, hav-ing failed to reply to the  new matter set up in the answer, they were  entitled to  judgment on  the pleadings.   Even conceding that the answer entitled the defendants to a ver-dict  on  the  matters  pleaded, it is quite  manifest that the case was  tried all  through as if the allegations of the an-swer were at issue.   The demurrer to plaintiff's evidence did not raise this question, nor the motion for new trial.   It a party would take  advantage of  such omission he should do so at the trial in a direct way.   Otherwise there is noth-ing to  distinguish  this case from that of  *Henslee v. Canne-fax*, 49 Mo. 295, and many others since  decided by  this court, where  it  is held, that where the  parties have  gone through the evidence and trial precisely as if the reply was in, they cannot take advantage of  such omission on appeal

III.   The petition in this  case was  properly drawn. It followed the  code in  making a  plain statement of the facts.   The law arising on the facts as developed, shows a personal liability that is sufficient.

The case being tried by the court, sitting as a jury, we discover nothing  in the  instructions indicating  that the learned judge  misconceived  the issues or the law arising thereon.

It follows that  that the judgment of the circuit court is affirmed.   All concur.