FARMERS AND MERCHANTS STATE BANK OF CLEVELAND, APPELLANTS, V.
THE ESTATE OF F. A. RATLIFF, RESPONDENT.*

Kansas City Court of Appeals.   June 27, 1927.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2549, p. 658, n. 40; Guardian and Ward, 28CJ, section 281, p. 1165, n. 90.

*Crouch & Crouch* for appellant.

*A. A. Whitsitt* and *D. C. Chastain* for respondent.

FRANK, C.—This case originated in the probate court of Cass county where appellant filed a claim against the estate of F. A. Ratliff, deceased. Said claim, caption and verification omitted, is as follows:

"Plaintiff states that the estate of F. A. Ratliff, deceased is indebted to it in the sum of nine hundred fifty-four and no/100 ($954) dollars, with interest at the rate of eight (8) per centum per annum, interest payable annually, from September 29, 1923, said sum being represented by a promissory note dated September 29, 1923, payable to Farmers and Merchants State Bank, of Cleveland, Missouri, said note signed F. A. Ratliff, curator for Lola Ratliff; that said F. A. Ratliff was the duly appointed curator of the estate of Lola Ratliff, minor; that no part of said note, principal or interest due thereon has been paid and plaintiff is entitled to have judgment against the estate of F. A. Ratliff for said sum of $954 with eight per cent interest thereon from September 29, 1923, as per the tenor of said note, a duly verified copy of said note being filed herein and made a part of this petition.

"954.00                          Cleveland, Missouri, Sept. 29, 1923.

"Six months after date, for value received, I promise to pay to the order of the Farmers and Merchants State Bank nine hundred fifty-

four and no/100 dollars, payable at the Farmers and Merchants State Bank, Cleveland, Missouri, with interest at eight per cent per annum from date until paid. With all interest payable annually, and if not so paid, to become as principal and bear the same rate of interest. Should the interest on this note not be paid when due, then the whole sum may, at the option of the legal holder of this note, be declared due and payable at once. Each of the makers hereof and the endorsers herein waive demand, notice and protest on this note. Ten per cent to be added as attorneys fees if placed in the hands of an officer for collection.

> "F. A. RATLIFF,
> "Cur. for LOLA M. RATLIFF,
> "By G. K. KERR, Atty."

The claim was disallowed by the probate court and claimant appealed to the circuit court where a trial of the cause before Honorable C. A. Calvird, special judge, resulted in a finding and judgment in favor of the estate. Claimant brings the case here by appeal.

The facts giving rise to this controversy may be stated thus:

Claimant is a banking corporation engaged in the banking business in the town of Cleveland, Missouri. In 1919 Walton Ratliff, son of decedent was cashier of this bank. In December of that year Walton Ratliff and Georgia Ratliff, his wife, executed to claimant bank their promissory note in the principal sum of $1000. In February, 1920, Walton Ratliff and Georgia Ratliff, his wife, both died leaving as their only heir Lola M. Ratliff, a minor. Deceased, F. A. Ratliff, father of Walton Ratliff was living at that time and was appointed administrator of the estates of Walton and Georgia Ratliff. The $1000 note was not presented as a claim against the estate of either Walton or Georgia Ratliff. In July, 1920, F. A. Ratliff, as administrator made a payment on the $1000 note and executed a renewal note for the remainder in the sum of $803.19. He signed the renewal note as administrator. In December, 1920, he executed a renewal note in the sum of $803.19. In July, 1921, he made a small payment on the note and executed a renewal note for the balance due in the sum of $800. This $800 note was signed F. A. Ratliff, Curator. Some time prior to the execution of this $800 note, the estates of Walton and Georgia Ratliff had been settled, and F. A. Ratliff had been discharged as administrator of said estates and appointed curator of the estate of the minor heir, Lola M. Ratliff. The $800 note was renewed in the same manner on November 23, 1921. On November 30, 1921, he borrowed $100 from the bank and executed a note therefor in the name of F. A. Ratliff, Curator, and the estate was given credit for said $100. On April 4, 1922, the $100 note and the $800 note were combined and a renewal note executed by him as curator in the sum of $900. This $900 note was renewed four different times thereafter, the interest being added to the principal. Each of these renewal notes

was signed by F. A. Ratliff, Curator, the last renewal being the $954 note involved in this suit.

The note in controversy in this action is signed, "F. A. Ratliff, Cur. of Lola M. Ratliff, By G. K. Kerr, Atty." Prior to the execution of this note F. A. Ratliff had executed to said G. K. Kerr a "power of attorney," the purpose of which is recited in said instrument as follows:

(1) To make and sign notes for me as curator and to sign same with full authority.

(2) To pay any obligation of mine as curator out of any funds available by check or otherwise, and

(3) To perform any act or deed for me as curator which I as curator would be lawfully entitled to do.

G. K. Kerr, cashier of claimant bank, testified:

"The people in the bank were dealing with F. A. Ratliff in his representative capacity as such administrator. And afterwards we knew he ceased to be administrator and became curator of the estate of Lola M. Ratliff, his grandchild. In our dealings with him we were dealing with him as curator. That is what we intended to do all the way through."

The record in this case does not show upon what theory the trial court decided it. There was no finding of facts and no declarations of law were asked or given. In this state of the record if there is any theory upon which the judgment can be upheld it will not be disturbed. [Central Missouri Trust Co. v. Taylor, 289 S. W. 658, 661.]

The facts are that decedent did not execute the original note out of which the claim in suit arose. Neither did he or the estate of which he was administrator receive any consideration by reason of the execution of the original note. The consideration for which the original note was given passed to Walton Ratliff.

Appellant seeks to hold the estate of decedent liable by reason of the fact that decedent while acting as administrator of the estate of Walton Ratliff renewed the note which Walton Ratliff had executed to appellant during his lifetime, the contention being that when decedent signed the renewal note, describing himself as administrator, he became personally liable thereon.

Appellant cites the case of Studebaker Bros. Mfg. Co. v. Montgomery, 74 Mo. 101, in support of his contention. The facts in the cited case show that Montgomery was in partnership with one, Marine and transacting business under the firm name of Montgomery & Marine; that Marine died and Montgomery was appointed as administrator of the partnership estate; that the partnership was indebted to Studebaker Bros. Mfg. Co. and Montgomery after his appointment as administrator executed a note to said company covering said partnership indebtedness nd signed the note, "N. S. Montgomery, as administrator, as surviving partner of M. & M."

In deciding this case on the facts above stated the Supreme Court said, "An administrator who signs a note describing himself as administrator, does not limit his liability unless he expressly confines his stipulation to pay out of the estate. [Edwards on Bills, p. 78.] The principle governing such cases is laid down in 2 Parsons on Bills and Notes, p. 6, as follows: 'An administrator, like any other trustee, will be held by his indorsement, although he add to his name the word 'executor' or 'administrator,' unless he say expressly that recourse is to be had not to him but only to the estate of the deceased."

The quotation from the above-cited case, standing alone, appears to support appellant's contention, however, an examination of the opinion shows that the court decided the case against Montgomery on the theory that the judgment was for the right party for reasons other than those stated in the above quotation as appears from the following quotation from the opinion: "He admits in his answer that the note was executed to plaintiff for a balance due them by the firm of Montgomery & Marine. For the payment of such balance he was bound in law individually as well as in his capacity as partner of said firm. We think the judgment is for the right party, and perceiving no error, hereby affirm it, in which all the judges concur."

Other Missouri cases announce a doctrine contrary to that announced in Studebaker Bros. Mfg. Co. v. Montgomery, supra. In Smith v. Alexander, 31 Mo. 193, 194, 195, speaking to a similar question the court said:

"Owing to the great diversity in the form of the instruments involving questions of this character, the adjudged cases furnish no general rule more definite than that referred to; and many of them have little applicability to other cases except in their general principles. In some of the authorities cited, the execution of the instrument in the form of that before us has been held the individual obligation of the person signing it, and not that of the individual or company indicated by the addition to the signature, such addition being regarded merely as *descriptio personarum*, while in others it has been held sufficient on its face to avoid personal liability. Although it would appear to be by no means settled that such a mode of execution —the mere addition of the official character to the name—is tantamount to a disclaimer of personal responsibility, it is deemed such an indication of the representative character as to warrant a resort to parol evidence, not of course to contradict or vary the writing, but to explain it. The purpose of introducing parol evidence in such cases is to prove extrinsic circumstances, by which the respective liability of the principal and agent may be determined, such as to which the consideration passed and credit was given, the agent's authority, etc."

In the case of Michael v. Jones, 84 Mo. 578, Jones was the legally appointed guardian of an insane person and in the capacity of guard-

ian purchased large quantities of wood from Michael to be used in a manufacturing business which he was conducting in the name of and for his insane ward. The suit was brought against Jones individually to recover the purchase price of the wood. It was conceded in the case that Jones as guardian had no authority to purchase the wood or carry on a manufacturing business in the name of his ward. Michael contended that as Jones assumed to act for another without authority, he was personally liable for the purchase price of the wood. In disposing of this contention, the Supreme Court at p. 582, of the opinion said:

"If the bare want of authority in the agent or trustee to bind the person or estate for which he assumes to be acting, renders him individually liable, irrespective of facts and circumstances indicating that no such liability was contemplated by either party, then the plaintiff is entitled to judgment upon the facts admitted in the answer. But I am satisfied that under the best considered modern decisions the principle invoked by the plaintiff cannot be carried to such an extent. The true rule, I think, is stated in Western Cement Co. v. Jones, 8 Mo. App. 373, to this effect 'that where all the facts are known to both parties, and the mistake is one of law as to the liability of the principal, the fact that the principal cannot be held is no ground for charging the agent with liability.' To the same effect is Humphrey v. Jones, 71 Mo. 62. In the present case there is no pretense that the guardian made any misrepresentation of fact, or was guilty of any concealment relating to his authority to contract with plaintiff. The evidence indicates clearly that both parties believed in good faith that the estate of Joseph H. Looke was responsible for the wood purchased by defendant in his capacity of guardian. Acting upon that faith, the guardian paid the plaintiff the greater portion of his debt from the assets of the estate. The simple fact that both parties were mistaken in the law about the authority of the guardian, ought not to render the guardian liable individually, in the absence of any promise to that effect by him, and when it is apparent that no benefit has been received by him."

In Breid v. Mintrup, 203 Mo. App. 567, the court in discussing a question similar in principal to the one involved in the case at bar said, "There is no question here as to defendant's power and authority to bind the trust estate by any contract of this character. It is not contended that the contract was binding upon the estate in the hands of defendant; on the contrary the suit proceeds upon the theory that by the contract alleged to have been made by defendant with plaintiff, defendant made himself personally liable to plaintiff. It is said to be the general rule that a trustee can be held personally on contracts made by him in behalf of the trust estate in the absence of a special agreement to look only to the trust estate. [1 Perry on Trust & Trustees, p. 700, sec. 437a, and authorities cited; Koken Iron

Works v. Kinoaly, 86 Mo. App. 199.] But the fact alone that the trustee is without authority to bind the estate will not of itself render him personally liable upon executory contracts where the facts show that no such liability was intended by either party. [Michael v. Jones, 84 Mo. 578; Humphrey v. Jones, 71 Mo. 62; Western Cement Co. v. Jones, 8 Mo. App. 373; Hackman et al. v. Maguire, 20 Mo. App. 286.]

In Stevens v. Hurley, 279 S. W. 720, 722, the question as to the capacity in which a certain lease was signed was under review. This court speaking through BLAND, J., said: "We think that the question as to in what capacity plaintiff signed the lease and the assignment is one of fact, and, therefore, if there were no estoppel involved, open to explanation by parol testimony. [Smith v. Alexander, 31 Mo. 193; Jones v. Williams, 39 S. W. 486, 40 S. W. 353, 139 Mo. 1, 37 L. R. A. 682; 61 Am. St. Rep. 436; Meyers v. Kilgen, 160 S. W. 569, 177 Mo. App. 724, 734, 735.]"

There is no estoppel pleaded or proven in this case. There is no showing that appellant parted with anything of value at the time decedent as administrator renewed the note. Neither is there showing that appellant was induced by any act of decedent not to present the note as a claim against the estate of the maker.

The cashier of appellant testified that the bank dealt with the decedent in his representative capacity as administrator; that it knew he afterwards ceased to be administrator and became curator of the minor heir; that in all the bank's dealings with decedent it dealt with him as curator; that it was the intention of the bank to so deal with him.

The evidence does not show that either of the parties intended at any time that decedent should be held personally liable on the note or that decedent ever promised personally to pay the note.

The weight of authority in Missouri is to the effect that when a party signs a written contract or obligation in a representative capacity under circumstances showing that it was not the intention of either of the parties at the time, that he should be individually responsible, he cannot be held personally liable thereon.

The record in the case at bar shows that it was not the intention of the bank to hold decedent personally liable on the note. It is not claimed that there was any fraud practiced or misrepresentations made by decedent or that he personally received any benefit from this note. Under these circumstances he ought not to be held individually responsible and his estate required to pay the note.

Having reached the conclusion that the estate of decedent is not liable for the payment of the note, it is unnecessary to discuss other points raised.

The judgment is therefore affirmed. *Williams, C.*, concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. *Bland* and *Arnold, JJ.*, concur; *Trimble, P. J.*, absent.