HARLEY DAVIS, Appellant, v. ROBERT HOLLIDAY et al.—No. 39328.—
188 S. W. (2d) 40.

Division One, June 4, 1945.

*Roy D. Williams* for appellant.

*F. A. Culmer, Charles L. Graham, Robert L. Hoy* and *W. T. Bellamy* for respondents.

12

BRADLEY, C.—Action to recover on two renewal notes, one for $7,000 and the other for $7,500. At the close of the case the court directed a ▮▮ verdict for plaintiff and the jury returned a verdict for $20,355, which included interest. Motion for a new trial was sustained and plaintiff appealed.

The cause was commenced in Howard County, but the venue was changed to Carroll County. The notes were dated April 22, 1936; were due one year after date, and were payable to the Fayette Bank. They were signed, "Methodist Episcopal Church South of Fayette, Missouri, by D. C. Rogers, president, Rowland Ricketts, Sec. & Treas., Board of Stewards." Hereinafter we refer to the Fayette Bank as the Bank, and to the Methodist Episcopal Church, South, of Fayette, as the Church. Defendants are members of the board of stewards of the Church, and plaintiff contends that the defendants as such members are personally liable on the notes.

The amount of the two notes is the balance due on three notes aggregating, when executed, $30,000, and dated February 23, 1928. The original notes were for $15,000, $10,000, and $5,000, and were signed in the same manner, as we understand, as the two notes sued on. The execution of the three original notes came about in this way. In 1928, Central College, a Methodist school located in Fayette, hereinafter referred to as the College, embarked upon an expansion program and put on a money raising campaign. The Church wanted to contribute $30,000 to the expansion program of the College, and the $30,000 was obtained from the Bank by the Church and turned over to the College. In the money raising campaign the College obtained a number of pledges and these, to the extent of more than $30,000, were put up with the Bank as collateral to secure the loan of $30,000 to the Church. Also, in connection with the loan, the Church executed a fourth note to the Bank for $8,000 and secured this note with deed of trust on the Church parsonage, and this note was put up as additional collateral to secure the $30,000 loan. We might say here that the grantors in the deed conveying the parsonage lot to the Church in 1872, inserted a clause limiting use to that of a Methodist parsonage, and that the Bank closed November 3, 1935, before the execution of the notes sued on.

February 23, 1928, when the three original notes were executed and the loan of $30,000 made, plaintiff and his father were livestock dealers and farmers, and depositors of the Bank. At that time plaintiff had " an individual box of his own" in the Bank, and in 1932 became a director of the Bank. The cashier of the Bank testified that plaintiff "took up", purchased, the $15,000 note in March, 1928; that $3,000, collected from the pledges to the College, was paid on the notes and that in September or October, 1928, plaintiff "took up" $12,000, that is, purchased the other two notes. The three original notes were not endorsed by the Bank when purchased by plaintiff, but were placed in his box. The Bank retained possession of the pledges, collected on them, and turned the collections over to plaintiff, so that on April 22, 1936, when the two renewal notes were executed, there was a balance of $14,500 due on the three original notes. The unpaid pledges were turned over to plaintiff "in November or December, 1935,

after the Bank closed''; plaintiff delivered these to his attorney, Judge Williams, who ''deposited them with the clerk of the circuit court of Howard County when the petition was filed'', and it was agreed that these pledges, at the time of the trial, were lost. The only reason given for making the renewal notes payable to the Bank (then closed) instead of making them payable to plaintiff was because ''the contract was made to the Fayette Bank.''

The contract referred to was executed along with the three original notes on February 23, 1928. This contract was pleaded by plaintiff and introduced in evidence by him, and defendants rely on it to establish that they are not personally liable on the renewal notes. Plaintiff, however, contends that the defendants are precluded from relying on the contract because they answered by general denial only, which plaintiff says is the same as saying the contract ''did not exist.'' No authority is cited which would support this contention, and we do not think that the situation is such as to justify depriving defendants of whatever there is in the contract helpful to them.

The contract was termed a ''contract and agreement for loan, security and repayment thereof.'' The Bank was the first party, the Church was the second party, and the College was the third party. It was signed, ''The Fayette Bank, by J. F. Denneny, its president, party of the first part; The Methodist Episcopal Church, South, of Fayette, Missouri, by its board of stewards, represented by George L. Todd, president of the Board, Rowland Ricketts, secretary of the board, party of the second part; The Curators of Central College, by Xenophon ▆ P. Wilfley, president of the board.'' In signing the College was not designated as the third party, but the contract recites that the College was the third party.

The contract recited that the Church desired to borrow $30,000 from the Bank and that the governing body of the Church, that is, the Quarterly Conference, had given the Church full authority to execute the contract and obtain the loan; that the board of stewards of the Church, after authorization by the Quarterly Conference, authorized the president and secretary of the board of stewards, George Todd and Rowland Ricketts ''and their successors in office'' to act for said board ''in all matters appertaining to the loan of $30,000''; to obtain said loan and turn the money over to the College.

The provisions of the contract upon which defendants rely are these: ''Whereas, all parties hereto agree that this contract shall govern the rights and liabilities of each and all parties hereto touching the initial notes given by the party of the second part to the party of the first part as evidence of said loan, and all renewal notes that may be subsequently given by said second party to the said first party as evidence of said loan, as set out hereinbelow; and they further agree that no act of any party hereto touching these loans shall be construed except through the terms of this contract.

"It is mutually understood and agreed by the parties hereto that the said Messrs. George Todd and Rowland Ricketts, and their successors in office representing the legally constituted board of stewards of the Fayette Methodist Episcopal Church, South, as bound by this contract and their signatures on the notes of the second party and do bind the said board of stewards of the Fayette Methodist Episcopal Church, South, to this contract and the said note *solely in their official capacity* as recipients and distributors of the funds and moneys belonging to the second party" (italics ours).

Also, it appears that the Quarterly Conference, by resolution adopted April 22, 1936, date of the renewal notes, authorized the board of stewards of the Church to execute the renewal notes "as evidence of indebtedness as and for" the Church. And on the same day the board of stewards by resolution authorized its chairman and secretary to execute said notes "in accordance with the resolution passed by the Quarterly Conference" of the Church.

The Church was a voluntary or unincorporated association and, as such, defendants say, could have been sued at the time of the execution of the original notes. Supporting such suggestion defendants make reference to the 7th provision of Sec. 1186, R. S. 1919, now Sec. 880, R. S. 1939, Mo. R. S. A., Sec. 880. On May 18, 1928, nearly three months after the execution of the original notes on February 23, 1928, Sec. 1186, R. S. 1919, was held unconstitutional, because of a defective title, in so far as it constituted voluntary or unincorporated associations suable entities. See Mayes v. United Garment Workers et al., 320 Mo. 10, 6 S. W. (2d) 333. Defendants make reference to the law respecting the right to sue a voluntary or unincorporated association at the time of the execution of the original notes and contract as an argument in support of the contention that the Bank relied upon the Church as such, and not upon the individuals constituting the board of stewards and their successors.

In the brief defendants say: "Where a board in control of a voluntary association makes a contract by which it is agreed and understood that the members of the board will not be individually bound, then they will not be bound even though there is no responsible principal behind them." In support of such contention defendants cite Heath v. Goslin et al., 80 Mo. 310, Michael v. Jones, 84 Mo. 578; Riffe v. Proctor et al., 99 Mo. App. 601, 74 S. W. 409; Lorimer v. McGreevy et al., 229 Mo. App. 970, 84 S. W. (2d) 667; Farmers & Merchants State Bank v. Ratliff's Estate, 222 Mo. App. 215, 297 S. W. 84; International Store Company v. Barnes (Mo. App.), 3 S. W. (2d) 1039; 2 Am. Jur., p. 248; 126 A. L. R. 119, note.

It will not be necessary to discuss the authorities cited. We think they support defendants' contention. The contract was the authority for the execution of the original notes and along with the resolutions, supra, of April 22, 1936, was the authority for the renewals. And,

16

as appears, the contract provides that it "shall govern the rights and liabilities of each and all parties touching the initial (original) notes . . . and all renewal notes that may be subsequently given." And as appears, the contract provides that the board of stewards and their successors were bound not personally, but "solely in their official capacity." The Bank could not have understood otherwise, and there is nothing in the record which could give plaintiff any greater rights than the Bank had. Sound reason requires the construction that the contract means that defendants are not personally bound.

Plaintiff contends that even though the contract be construed to mean that defendants were not personally bound on the notes, that they are nevertheless so bound because they ratified the execution of the notes. The record shows that from time to time the Church's board of stewards, that is, the defendants, have endeavored to do something about the debt that the *Church*, so far as appears here, *justly* owes plaintiff. Plaintiff calls attention to these activities and invokes such in support of his claim of ratification. Plaintiff points out that through the activities of the board of stewards (1) payments were made on the notes; (2) the renewal notes were executed; (3) ways and means of paying plaintiff were discussed; (4) efforts were made to get the College, the beneficiary of the $30,000 loan "interested in paying the debt"; and (5) it appears in the minutes (April 25, 1939) of the board of stewards that: "A motion was made, seconded and carried that chairman Phillips appoint a committee of three to see if it would be possible to get enough three year subscriptions to make it safe for a group of the church members to sign notes for $5,000 to offer Mr. Davis (plaintiff) for the $15,000 notes he holds against the Church and also to get the Quarterly Conference to authorize it and them to give Dr. F. A. Culmer the power to make this offer to Mr. Davis, and also to make settlement with Mr. Davis should he accept the offer." So far as appears nothing came from the effort to settle.

There is nothing in the record that will support the suggestion that defendants, in their efforts to do something about paying these notes, were acting otherwise than in their official capacity as stewards of the Church, as they did, according to the contract, in the execution of the original and renewal notes.

Plaintiff, in the brief, says that to hold that defendants are not personally bound would "work a gross injustice" and, "in effect, would be to say that when you lend to a Church they can give you worthless collateral and then give the money to another religious society and the lender cannot recover from any one." Plaintiff's situation is unfortunate and merits full sympathy, but under the law as we see it, and the facts, defendants are not personally bound to pay the debt that the *Church as such owes*.

The order or judgment granting the new trial should be affirmed, and the cause remanded with direction to dismiss plaintiff's petition. It is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.